Brady McCULLOUGH,
Petitioner-Appellant,

v.

W. J. ESTELLE, Director Texas Department of Corrections, Respondent-Appellee.

Civ. A. No. 78–1490
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 23, 1979.

Phil L. Adams, (Court-appointed), Richardson, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Michael H. Corley, David M. Kendall, Joe B. Dibrell, Jr., Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

PER CURIAM:

The denial of the petition for a writ of habeas corpus, 28 U.S.C. § 2254, is affirmed based upon the Memorandum Opinion of the Honorable Robert Hill appended hereto along with the excerpts from the magistrates' recommendations referred to therein.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRADY McCULLOUGH

v.

W. J. ESTELLE, DIRECTOR, TEXAS
DEPARTMENT OF CORRECTIONS

CIVIL ACTION NO. CA–3–77–0080–D

## MEMORANDUM OPINION

Brady McCullough, applicant, by this application for writ of habeas corpus challenges the legality of his confinement by the State of Texas pursuant to judgments and sentences of 20 years imprisonment imposed on him in May, 1975. Applicant has exhausted his state remedies, and advances these complaints: (1) that he was denied equal protection in that persons similarly situated to him have had drug charges dismissed against them because of the questionable activities of Dallas police officers, while he remains in jail; (2) that evidence vital to the case against him was manufactured by these police officers; and (3) that the prosecutor's conduct at trial was constitutionally improper.

Respondent filed a Motion to Dismiss, which the court denied. The court appointed applicant an attorney, and held an evidentiary hearing December 22, 1977. Having now considered the evidence elicited at the hearing and the applicable law, the court is of the opinion that all relief sought by applicant should be denied. The complaints outlined above will be discussed in order.

First, applicant's equal protection argument is based upon the following facts. Applicant was convicted of delivery of heroin, primarily on the testimony of Dallas Police Officers G. O. Smith and E. R. Reynolds. Smith and Reynolds later admitted improprieties, in connection with other cases, in their testimony as to the severity of the offenses there involved, and in the handling of certain controlled substances.

The District Attorney of Dallas County, learning of these improprieties, dismissed 129 cases brought but not yet tried that involved Reynolds and Smith. In another case, defendants were dismissed after the guilt stage but before sentencing. However, in 33 cases, including applicant's convictions had been obtained on the testimony of Smith and Reynolds after pleas of not guilty; these cases the District Attorney did not dismiss. Rather, those convicted were allowed the opportunity to take lie detector tests. Applicant accepted this offer, was tested, failed, and did not have his case dismissed. Most of the 33 took the tests. Only one passed; he was ultimately released from detention.

Applicant claims that this set of facts demonstrates a denial of equal protection in that he was not released while the 129 pending cases were dismissed. Further, he claims that he was singled out and treated differently when given the lie detector test. The court disagrees with both claims. As to the first, applicant runs headlong into the fact that he was *not* similarly situated to those dismissed without lie detector tests being given. In those cases, trials were not yet completed or never begun. The credibility of Smith and Reynolds was effectively destroyed because of the improprieties that had come to light; as a tactical matter the cases had become impossible to try, and their dismissal was merely a recognition of this. Applicant, however, was already convicted, presumably lawfully. The court does not think that the District Attorney

had the duty to release all those tried upon the testimony of Smith and Reynolds, merely because he chose to dismiss pending cases. In light of the results of the lie detector tests, many of those convicted were probably in fact guilty; the giving of the lie detector tests, rather than being less than equal protection required, may have been more. The court concludes that the state has not denied applicant equal protection by the mere fact that he was not automatically released from imprisonment when a large number of pending cases were dismissed.

As to the second equal protection claim, the evidence adduced at hearing was overwhelmingly clear: applicant was treated the same as the other 32 given lie detector tests. The polygraph examiner remembered clearly that he followed typical procedures with applicant, that applicant was a good test subject, and that applicant failed the test. Moreover, no competent evidence was adduced that would indicate any motive to treat applicant differently from others given the test. There was testimony that indicated that applicant might not, for medical reasons, have been an ideal test subject on the date of the test, but this testimony was not conclusive as to whether applicant *in fact* was not testable, and is contradicted by the examiner's specific recollection. Also, of the 33 tested one was found medically unfit to take the test, so apparently at least to some extent procedures were being followed to identify those medically unable to be adequately tested. In sum, the court finds as a fact that applicant was treated no differently in the administration of the lie detector test than the other prisoners given the test. He failed, and as a result was denied release, but not because he was in any way singled out for discriminatory treatment.

Applicant's second complaint is that he was denied due process because essential evidence, upon which his conviction was based, was "manufactured" and/or "salted" by Reynolds and Smith. As pointed out in the court's Order of October 31, 1977, this can amount to a due process violation if in fact established. The court finds, however, that applicant has not established this fact. Other than the general charges of improprieties against the testifying officers, improprieties that were not shown to include the "manufacturing" and/or "salting" of evidence for use at trial, there is nothing before the court that indicates such "manufacturing" and/or "salting" in applicant's case. No specific motive for such an act against applicant was shown: applicant admitted not knowing either officer before his arrest. Moreover, the fact that only one person of those taking the lie detector tests "passed" is some indication that the officers' improprieties did not necessarily extend to every case in which they were involved. Applicant has simply fallen far short of carrying his burden to demonstrate that in fact he was convicted upon "manufactured" and/or "salted" evidence.

Applicant's final complaint is of the alleged prejudicial conduct of the prosecutor. After independently reviewing all papers on file in this case, the court is of the opinion that as to this issue the findings and conclusions of the Magistrate (described at No. 3, pages 2–3 of the Magistrate's findings, conclusions and recommendation) are correct, and adopts these as the findings and conclusions of the court.

An appropriate judgment will be entered.

Dated this 6th day of February, 1978.

    (s) Robert Hill
        United States District Judge

EXCERPT FROM PARAGRAPH 3 OF THE FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE

3. Applicant complains of the prejudicial conduct of the district attorney in posting two improper questions to one of the testifying officers concerning a drug transaction with a fellow named "Red", who operated a hamburger stand where the narcotics agent had purchased heroin from applicant. This complaint was presented to the Court of Criminal Appeals in the direct appeal and ruled on adversely to applicant. The questions, the objections thereto, and the ruling

of the Court are set forth in the Statement of Facts at pages 56 and 57, and are quoted in the opinion of the Court of Criminal Appeals. As the Court of Criminal Appeals notes, the questions were not answered. The Court immediately sustained the objection and instructed the jury not to consider the question for any purpose. A motion for mistrial was denied. The Court held that after looking at the entire record with the surrounding circumstances that the asking of the questions did not constitute reversible error. I believe there is nothing so fundamentally unfair in that ruling as to constitute a denial of due process of law. Although the questions are admittedly improper, there is no showing that the prosecutor was acting in bad faith in asking the questions. I am of the opinion that under the rationale in the cases of *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431, and *U. S. v. Leon,* 6 Cir., 534 F.2d 667, and in the context of the remaining testimony in this trial that the asking of the questions did not deny applicant a fair trial. As I have already noted, the questions were not answered, the Court promptly sustained an objection and the jury was told not to consider the question for any purpose.