848 F.2d 606
 Zackary ROGERS, Petitioner-Appellee,
v.
James A. LYNAUGH, Director, Texas Department of Corrections,
Respondent- Appellant.
 No. 87-6011.
 United States Court of Appeals,
Fifth Circuit.
 June 30, 1988.
 
 Margaret Portman Griffey, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellant.
 Zackary Rogers, Groves, Tex., pro se.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before VAN GRAAFEILAND,* JOHNSON, and JOLLY, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 The State appeals from a judgment of the district court granting a writ of habeas corpus in this 28 U.S.C. Sec. 2254 case. We affirm.
 
 I. Facts and Procedural History
 
 2
 Petitioner Zackary Rogers was found guilty in Texas state court under section 29.02 of the Texas Penal Code of the second degree felony of robbery committed in 1983. For second degree felony, section 12.33 of the Texas Penal Code specified as punishment any prison term between two and twenty years as well a possible fine up to $10,000. For sentencing purposes, the indictment also charged that Rogers had earlier been convicted in 1977 of another robbery. Punishment in the present case was referred to the jury. The jury found that Rogers had previously been convicted in 1977 of robbery. Under these circumstances, section 12.42 of the Texas Penal Code specified that Rogers be punished for the instant offense (the 1983 robbery) as though found guilty of a first degree felony. For first degree felony, section 12.32 of the Texas Penal Code specified as punishment any prison term between five and ninety-nine years as well as a possible fine up to $10,000. The jury assessed as punishment a prison term of forty years as well as a fine of $5,000. The state trial court entered judgment in accordance with the jury's finding of guilt and its assessment of punishment.
 
 
 3
 The judgment was affirmed by the Texas state courts on direct appeal. Rogers then unsuccessfully sought habeas relief in the Texas state courts. Rogers thereafter applied to federal district court for habeas relief under 28 U.S.C. Sec. 2254, presenting some three claims including a claim of prosecutorial misconduct at the sentencing phase. The federal district court found the claim of prosecutorial misconduct to be meritorious and issued a writ of habeas corpus ordering Rogers' release from custody unless the State caused Rogers to be retried. The State appeals. We affirm.
 
 II. Discussion
 A.
 
 4
 Prosecutorial statements may violate due process in two ways. First, prosecutorial statements may implicate "a specific provision of the Bill of Rights" incorporated into the fourteenth amendment by the due process clause. Second, if prosecutorial statements do not implicate any such other incorporated constitutional right, they may constitute "a denial of due process" generally;[1] sometimes called a "generic substantive due process" violation.[2] The case law supplies a different test for each kind of due process violation.
 
 1.
 
 5
 In the case of an asserted generic due process violation, the court asks "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' "[3] Under this test, although the asserted prosecutorial misconduct may have made the defendant's trial less than " 'perfect,' "[4] that imperfection must have rendered the trial "unfair" in order to be "constitutional error."[5] Thus, a court may decide that the asserted imperfection in the trial did not rise to the level of constitutional error without having to apply a harmless error test.[6] This Circuit has developed the following test of constitutional error when a generic due process violation is asserted: "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted."[7]
 
 2.
 
 6
 In the case of asserted prosecutorial misconduct implicating some other incorporated constitutional right such as the right to remain silent, the court asks " ' "whether or not the [prosecutor's] statement was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' "[8] If under this test the prosecutorial misconduct is constitutional error, the court must generally inquire further whether or not the error is harmless.[9]B.
 
 
 7
 During the sentencing phase of Rogers' trial, the State introduced evidence of three prior felony convictions of Rogers: (1) the 1977 robbery conviction charged in the indictment together with (2) another 1977 robbery conviction and (3) a 1977 burglary conviction. In its closing statement, the State made this argument to the sentencing jury:
 
 
 8
 This is his fourth final conviction for a felony offense. Robbery, robbery, burglary and now robbery again. I submit to you that each one of those felony offenses is worth at least 10 years. He received 12 on the first three. You put those 12 together and you come up with 36. And that is discounting what he has done since he got out of the penitentiary. But I submit to you that if you allocate just 10 years to each of those felony convictions you come up with 40.
 
 1.
 
 9
 Referring to prosecutorial argument to the jury at the guilt or innocence phase of trial, the American Bar Association Standards for Criminal Justice advise that the
 
 
 10
 prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.[10]
 
 
 11
 In application of this standard, courts have said that the prosecution may not "misstate[ ] the law" when arguing to the jury, whether during the guilt or innocence phase or the sentencing phase.[11]
 
 
 12
 The State contends in defense of the closing argument set out above that the three prior felony convictions were relevant under the rehabilitation and specific deterrence purposes of Texas sentencing law to show the need for a long prison term as an appropriate sentence for the instant conviction. The fact that Rogers had committed the instant offense after having been previously convicted of felonies showed, the State argues, that Rogers had not been rehabilitated by the sentences served for the prior convictions. This assertedly suggested that Rogers could not be expected to be rehabilitated during any short prison term the jury might assess for the instant offense. Also, the prior robbery convictions assertedly confirmed that the violence exhibited by Rogers in the instant offense was not an isolated event and demonstrated the need for specific deterrence by assessing a long prison term.
 
 
 13
 Rogers does not, however, dispute that prior convictions may be relevant to the rehabilitation and specific deterrence goals of the Texas sentencing law. There can be no contention, however, that Texas sentencing law authorizes the assessment of a ten-year prison term for the instant conviction and an additional ten-year prison term for each of three past convictions for which final sentences have already been received and served.[12] Further, to the extent the State suggested otherwise to the sentencing jury, it misstated the governing Texas law and thereby tended to commit a generic due process violation.
 
 
 14
 We do not reach whether this possible generic due process violation amounted to constitutional error because we conclude below that the misstatement went beyond a generic due process violation by countermanding a specific constitutional right incorporated into the fourteenth amendment by the due process clause.2.
 
 
 15
 a.
 
 
 16
 The fifth amendment guarantee against double jeopardy is enforceable against the states through the fourteenth amendment.[13] Among its other protections, the guarantee "protects against multiple punishments for the same offense."[14] We conclude that the State's argument to the sentencing jury challenged here " ' "was of such character that a jury would naturally and necessarily take it to be" ' "[15] an exhortation to assess multiple punishments for the same offense.
 
 
 17
 The close question before this Court is whether the jury understood the State's contested argument viewed in context[16] to be urging a forty-year prison term for reasons of specific deterrence and rehabilitation or whether it understood that argument to be urging multiple punishments for the same offense.[17] The State's argument told the sentencing jury that "each one of th[e] felony offenses" (the instant robbery offense and the three prior offenses) was "worth at least 10 years." The State's argument did not say that what the three prior offenses taken together with the instant offense implied about Rogers' facility for rehabilitation and his violent propensities warranted a forty-year prison term. Instead, the prior offenses themselves were said to be each worth ten years. Critically, the State urged the jury to "allocate just 10 years to each of th[e]se felony convictions [to] come up with 40" years of prison time. If the jury followed the State's urging, the jury allocated ten years for the instant offense, leaving thirty years of a forty-year prison term to be otherwise accounted for. Following the State's urging further, the jury accounted for those remaining thirty years by allocating an additional ten years for each of the three prior convictions for a total addition of thirty years. But Rogers had already received and served final sentences for these three prior offenses. The State was thus necessarily urging the jury to assess a new punishment in addition to the earlier punishment (and thus multiple punishments) for each of the three prior offenses.[18] We must conclude that the State thereby committed constitutional error in its closing argument to the jury during the sentencing phase of Rogers' trial.
 
 
 18
 b.
 
 
 19
 It remains to be decided whether the error was harmless.[19] Here, the State as " 'beneficiary of the constitutional error' " bears the burden of demonstrating " 'beyond a reasonable doubt that the error complained of did not contribute' " to the sentencing verdict obtained.[20]
 
 
 20
 In some settings, for instance error at the guilt or innocence stage, the jury has had only two options from which to choose. In that setting, the State may attempt to meet its burden by showing that the evidence of guilt was so overwhelming (and the prejudicial effect of the error so minor in comparison) that the jury would have found guilt over innocence even in the absence of the error.[21] This approach is not available to the State in the present case because the sentencing jury had a full range of possible prison terms from which to choose. The State cannot show that, even if there had been no error, the present jury would have selected precisely the same forty-year prison term and no shorter term.
 
 
 21
 In other settings, the jury may have had more than two options from which to choose, but the jury chose the severest option. In that setting, the State may attempt to meet its burden by showing that the factors weighing in favor of the severest punishment were so heavy (and the prejudicial effect of the error so minor in comparison) that the jury would have chosen the severest option even in the absence of error.[22] This approach is not available to the State in the present case because the sentencing jury chose, not the severest option, but rather a forty-year prison term from a range of possible prison terms between five and ninety-nine years in length. Thus, the State cannot show that, even if there had been no error, the jury would have selected precisely the same forty-year prison term and no shorter term, whether much shorter or only somewhat shorter.[23]
 
 
 22
 Finally and most compelling, there is the affirmative evidence of harmful effect in the fact that, from among its many sentencing options, the present jury selected the very forty-year prison term advocated by the State at the very time it made its argument in contravention of the guarantee against double jeopardy.[24]
 
 
 23
 We conclude that the State has not met its burden of showing beyond a reasonable doubt that the constitutional error in its argument to the jury was harmless.[25]III. Conclusion
 
 
 24
 For the reasons assigned, the judgment of the district court is
 
 
 25
 AFFIRMED.
 
 
 
 *
 Circuit Judge of the Second Circuit, sitting by designation
 
 
 [1]
 Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); see also O'Bryan v. Estelle, 714 F.2d 365, 387 (5th Cir.1983), cert. denied, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. Unit A 1980); Cobb v. Wainwright, 609 F.2d 754, 755-56 (5th Cir.), cert. denied, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980); see Kirkpatrick v. Blackburn, 777 F.2d 272, 278, 280 (5th Cir.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986)
 
 
 [2]
 Kirkpatrick, 777 F.2d at 280
 
 
 [3]
 Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (quoting Donnelly, 416 U.S. at 643, 94 S.Ct. at 1871); accord, e.g., Kirkpatrick, 777 F.2d at 278 ("Unless some other constitutional right incorporated into the fourteenth amendment by the due process clause is abridged, due process is violated only if the court's action denies a defendant a fundamentally fair trial" (footnote omitted)); Byrne v. Butler, 845 F.2d 501, 507 (5th Cir.1988); Bridge v. Lynaugh, 838 F.2d 770, 774 (5th Cir.1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987); Griffin v. Lynaugh, 823 F.2d 856, 864 (5th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988); Ortega v. McCotter, 808 F.2d 406, 407, 410-11 (5th Cir.1987); Felde v. Blackburn, 795 F.2d 400, 403 (5th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987); Welcome v. Blackburn, 793 F.2d 672, 679 (5th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1985, 95 L.Ed.2d 825 (1987); Mattheson v. King, 751 F.2d 1432, 1445-46 (5th Cir.1985), cert. dismissed, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); Willie v. Maggio, 737 F.2d 1372, 1389-91 (5th Cir.), cert. denied, 469 U.S. 1002, 105 S.Ct. 451, 83 L.Ed.2d 342 (1984); O'Bryan, 714 F.2d at 387; Whittington v. Estelle, 704 F.2d 1418, 1421-25 (5th Cir.), cert. denied, 464 U.S. 983, 104 S.Ct. 428, 78 L.Ed.2d 361 (1983); Fulford v. Maggio, 692 F.2d 354, 359-60 (5th Cir.1982), rev'd on other grounds, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); Tijerina v. Estelle, 692 F.2d 3, 7 (5th Cir.1982); Passman v. Blackburn, 652 F.2d 559, 567-68 (5th Cir. Unit A 1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982); Bronstein v. Wainwright, 646 F.2d 1048, 1054-56 (5th Cir. Unit B 1981); Jones v. Estelle, 622 F.2d 124, 127 (5th Cir.), cert. denied, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980); Easter v. Estelle, 609 F.2d 756, 760 (5th Cir.1980); McCullough v. Estelle, 591 F.2d 1158, 1161 (5th Cir.1979); Cronnon v. Alabama, 587 F.2d 246, 251 (5th Cir.), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979); Houston v. Estelle, 569 F.2d 372, 382-84 (5th Cir.1978); Alvarez v. Estelle, 531 F.2d 1319, 1323 (5th Cir.1976), cert. denied, 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977); Bryant v. Caldwell, 484 F.2d 65, 66-67 (5th Cir.1973), cert. denied, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974); Higgins v. Wainwright, 424 F.2d 177, 178 (5th Cir.), cert. denied, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970). In Darden, the "prosecutors' argument did not ... implicate other specific rights of the accused such as the right to counsel or the right to remain silent." 477 U.S. at 182, 106 S.Ct. at 2472
 In Donnelly itself, the Supreme Court observed: "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them"; on the other hand, when these specific guarantees are not involved, "the claim is only that a prosecutor's remark ... by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process." 416 U.S. at 643, 94 S.Ct. at 1871. See United States v. Weddell, 800 F.2d 1404, 1410 (5th Cir.), reh'g granted in part on other grounds, 804 F.2d 1343 (5th Cir.1986).
 
 
 [4]
 Darden, 477 U.S. at 183, 106 S.Ct. at 2473 (quoting Darden v. Wainwright, 513 F.Supp. 947, 958 (M.D.Fla.1981))
 
 
 [5]
 477 U.S. at 183 n. 15, 106 S.Ct. at 2473 n. 15
 
 
 [6]
 See 477 U.S. at 183 n. 15, 106 S.Ct. at 2473 n. 15
 
 
 [7]
 Kirkpatrick, 777 F.2d at 278-79 (footnote omitted) (discussing generic due process violation in the context of failure to grant a continuance). For cases applying the same test to generic due process violations in the context of prosecutorial misconduct, see id. at 281 ("There is such unfairness only if the prosecutor's remarks evince 'either persistent and pronounced misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred' " (quoting Fulford, 692 F.2d at 359)); Byrne, 845 F.2d at 508; Bridge, 838 F.2d at 774; Welcome, 793 F.2d at 679; Willie, 737 F.2d at 1390; accord Brooks v. Kemp, 762 F.2d 1383, 1402, 1413 (11th Cir.1985) (en banc), cert. denied, 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986), and vacated, 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), reinstated, 809 F.2d 700 (11th Cir.) (en banc), cert. denied, --- U.S. ----, 107 S.Ct. 3240, 97 L.Ed.2d 742 (1987). In Kirkpatrick, the Court went on to observe that, once constitutional error has been established by demonstrating the reasonable probability of a different verdict, the "subsequent application of a second" test of effect, that is, the "harmless-error test," may be "superfluous." 777 F.2d at 280
 
 
 [8]
 Milton v. Procunier, 744 F.2d 1091, 1095 (5th Cir.1984) (quoting United States v. Jennings, 527 F.2d 862, 871 (5th Cir.1976) (quoting United States v. Wilson, 500 F.2d 715, 721 (5th Cir.1974), cert. denied, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975))), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); see also Lavernia v. Lynaugh, 845 F.2d 493, 496-97 (5th Cir.1988); Passman v. Blackburn, 797 F.2d 1335, 1346 (5th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987); Brock v. McCotter, 781 F.2d 1152, 1159 (5th Cir.), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); Porter v. Estelle, 709 F.2d 944, 959 (5th Cir.1983), cert. denied, 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984); Braxton v. Estelle, 641 F.2d 392, 397 (5th Cir. Unit A 1981); Meyer v. Estelle, 621 F.2d 769, 772-74 (5th Cir.1980); Cobb, 609 F.2d at 756 n. 4; Frank v. Blackburn, 605 F.2d 910, 914 (5th Cir.1979), adhered to in relevant part, 646 F.2d 873, 875 (5th Cir.1980) (en banc), reh'g granted in part on other grounds, 646 F.2d 902 (5th Cir.) (en banc), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981); Clark v. Blackburn, 605 F.2d 163, 165 (5th Cir.1979); see United States v. Hasting, 461 U.S. 499, 515 n. 6, 103 S.Ct. 1974, 1983 n. 6, 76 L.Ed.2d 96 (1983) (Stevens, J., concurring); United States v. Namer, 835 F.2d 1084, 1089-90 (5th Cir.1988); United States v. Sardelli, 813 F.2d 654, 656-57 (5th Cir.1987); Blackburn v. Cross, 510 F.2d 1014, 1017, 1019 (5th Cir.1975); Wingate v. Wainwright, 464 F.2d 209, 215 (5th Cir.1972)
 
 
 [9]
 Chapman v. California, 386 U.S. 18, 21-26, 87 S.Ct. 824, 827-29, 17 L.Ed.2d 705 (1967); Passman, 797 F.2d at 1347-50; Richardson v. Lucas, 741 F.2d 753, 754-55 (5th Cir.1984); Albert v. Montgomery, 732 F.2d 865, 870-71 (11th Cir.1984); Price v. King, 714 F.2d 585, 588 (5th Cir.1983); Alderman v. Austin, 695 F.2d 124, 125-26 (5th Cir.1983) (en banc); Stone v. Estelle, 556 F.2d 1242, 1245-46 (5th Cir.1977), cert. denied, 434 U.S. 1019, 98 S.Ct. 742, 54 L.Ed.2d 767 (1978); Wingate, 464 F.2d at 214-15; Blackburn, 510 F.2d at 1019-20; see Namer, 835 F.2d at 1089-90; Sardelli, 813 F.2d at 657; Weddell, 800 F.2d at 1410-11; United States v. Shaw, 701 F.2d 367, 382 (5th Cir.1983), cert. denied, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); United States v. Allston, 613 F.2d 609, 611 (5th Cir.1980); United States v. Mock, 604 F.2d 341, 346-47 (5th Cir.1979); United States v. Edwards, 576 F.2d 1152, 1154-55 (5th Cir.1978); United States v. Harp, 536 F.2d 601, 603 (5th Cir.1976); United States v. Bates, 512 F.2d 56, 58 (5th Cir.1975); United States v. White, 444 F.2d 1274, 1278 (5th Cir.), cert. denied, 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971); Green v. United States, 426 F.2d 661, 662 (D.C.Cir.1970)
 
 
 [10]
 I American Bar Association Standards for Criminal Justice standard 3-5.8(d), at 3.87 (2d ed. 1980) (emphasis supplied); see United States v. Young, 470 U.S. 1, 8 & n. 5, 105 S.Ct. 1038, 1042 & n. 5, 84 L.Ed.2d 1 (1985)
 
 
 [11]
 Willie, 737 F.2d at 1390; see also Kirkpatrick, 777 F.2d at 283-84; H.B. Vess, Walking a Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument, 64 Nw. U.L.Rev. 22, 25 & n. 35 (1973)
 
 
 [12]
 See infra notes 14 & 18
 
 
 [13]
 Benton v. Maryland, 395 U.S. 784, 793-96, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); see also North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); De La Rosa v. Lynaugh, 817 F.2d 259, 263 n. 6 (5th Cir.1987)
 
 
 [14]
 Pearce, 395 U.S. at 717, 89 S.Ct. at 2076 (footnote omitted); see also United States v. Levy, 803 F.2d 1390, 1393 (5th Cir.1986)
 
 
 [15]
 Supra note 8
 
 
 [16]
 See, e.g., Passman, 797 F.2d at 1346
 
 
 [17]
 The State argues that this case merely poses the issue whether the use of prior convictions under sentence enhancement statutes violates the guarantee against double jeopardy. See Woodward v. Beto, 447 F.2d 103, 104 (5th Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 325, 30 L.Ed.2d 275 (1971); Sudds v. Maggio, 696 F.2d 415, 417-18 (5th Cir.1983); Price v. Allgood, 369 F.2d 376, 377-78 (5th Cir.1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967). We disagree
 In the present case, the Texas Penal Code as explained supra in part I used Rogers' prior conviction for sentence enhancement purposes to enlarge the range of possible punishment from a range of two to twenty years to a range of five to ninety-nine years. Rogers has not challenged this enlargement of the range of possible punishment. He argues instead that, regardless of the range of possible punishment, the State may not urge the jury to assess one punishment as appropriate within the range of possible punishment for the instant conviction and then urge the jury to assess additional punishments for prior convictions for which he has already received and served final sentences.
 
 
 [18]
 Cf. Wilkerson v. State, 736 S.W.2d 656, 660 (Tex.Crim.App.1987); Lomas v. State, 707 S.W.2d 566, 568-70 (Tex.Crim.App.1986); Ward v. State, 581 S.W.2d 164, 168 (Tex.Crim.App.1979); Walls v. State, 548 S.W.2d 38, 41 (Tex.Crim.App.1977); Brown v. State, 530 S.W.2d 118, 119-20 (Tex.Crim.App.1975); Jackson v. State, 529 S.W.2d 544, 546 (Tex.Crim.App.1975); McGowan v. State, 729 S.W.2d 316, 318 (Tex.App.--Dallas 1987); January v. State, 678 S.W.2d 243, 245 (Tex.App.--Corpus Christi 1984); Klingbeil v. State, 659 S.W.2d 98, 99 (Tex.App.--Houston [14th Dist.] 1983)
 
 
 [19]
 Supra note 9; cf. United States v. Gonzalez-Sanchez, 825 F.2d 572, 584 (1st Cir.), cert. denied , --- U.S. ----, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); United States v. Gornto, 792 F.2d 1028, 1030-34 (11th Cir.1986); Yawn v. United States, 244 F.2d 235, 238 (5th Cir.1957)
 
 
 [20]
 Passman, 797 F.2d at 1347 (quoting Chapman, 386 U.S. at 24, 87 S.Ct. at 828)
 
 
 [21]
 See generally Alderman, 695 F.2d at 125-26; Edwards, 576 F.2d at 1155; Stone, 556 F.2d at 1245-46
 
 
 [22]
 See generally Thompson v. Estelle, 642 F.2d 996, 999 (5th Cir. Unit A 1981); Wilson v. Estelle, 625 F.2d 1158, 1159-60 (5th Cir. Unit A 1980), cert. denied, 451 U.S. 912, 101 S.Ct. 1985, 68 L.Ed.2d 302 (1981); Thomas v. Savage, 513 F.2d 536, 539-40 (5th Cir.1975), cert. denied, 424 U.S. 924, 96 S.Ct. 1135, 47 L.Ed.2d 333 (1976). Of course, the State may also prove harmlessness beyond a reasonable doubt by showing that the sentencing jury (despite constitutional error) chose the least severe available option. See Mabry v. Klimas, 448 U.S. 444, 446, 100 S.Ct. 2755, 2757, 65 L.Ed.2d 897 (1980)
 
 
 [23]
 See Hicks v. Oklahoma, 447 U.S. 343, 345-46, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980); Mendiola v. Estelle, 635 F.2d 487, 489 n. 1 (5th Cir. Unit A 1981)
 
 
 [24]
 See Gill v. Estelle, 530 F.2d 1152, 1155 (5th Cir.1976), cert. denied, 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977)
 We note that the state trial court's jury instructions at the sentencing phase were exceedingly brief and have no apparent bearing upon the issues now presented. The State has not relied upon those instructions in its arguments to this Court.
 
 
 [25]
 The State argues that its contested closing statement was a response invited by the preceding closing statement of Rogers' counsel. The "idea of 'invited response' is used not to excuse improper comments, but to determine their effect." Darden, 477 U.S. at 182, 106 S.Ct. at 2472 (citing Young, 470 U.S. at 12, 105 S.Ct. at 1045)
 In his closing statement, Rogers' counsel observed that the 1977 robbery conviction charged in the indictment for enhancement purposes had enlarged the range of possible punishment. He went on to say:
 [W]hile you consider that [1977 robbery] conviction I would also ask you to look at the fact that he has paid his debt to society ... and served his time in the penitentiary for that offense.
 It now becomes your duty to fit the punishment to this crime. What was this crime worth? ... I'm asking you to treat Mr. Rogers like a human being. Don't just go back there and say, well, he did it once before back in '77, he didn't learn his lesson then, let's just give him life in the penitentiary and forget about it and treat him like a piece of garbage. I don't think any human being deserves that. I'm asking you, begging you, imploring you to give Mr. Rogers a short term in the penitentiary based on the facts and circumstances that you heard in the case.
 Invited response analysis typically applies when "defense counsel argues improperly, provoking the prosecutor to respond in kind." Young, 470 U.S. at 11, 105 S.Ct. at 1044 (emphasis supplied); see also id. 470 U.S. at 13, 105 S.Ct. at 1045 (referring to "two inappropriate arguments"). The State does not contend that the closing argument of Rogers' counsel was improper. Rogers' counsel did not tell the jury that it could not consider the 1977 robbery conviction. Indeed, he said "while you consider that conviction." Instead, he was under the circumstances naturally intent on impressing upon the jury the importance of the sentencing consideration, among others, that the punishment fit the instant crime. In fact, Rogers' counsel himself had elsewhere invoked specific deterrence and rehabilitation as other sentencing considerations.
 This proper argument by Rogers' counsel at most invited the State to make the proper argument of urging upon the jury the importance of other sentencing considerations to which Rogers' prior convictions were relevant. It did not invite the State to urge the jury to assess multiple punishments for the same offense.