Gordon Kent DAVIS, Appellant,

v.

STATE of Texas, State.

No. 2–88–300–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 30, 1989.

**946**

Michael Logan Ware, Law Offices of Rickard & Ware, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Ken Dies, Edwin Youngblood, David Ward, Asst. Crim. Dist. Attys., Betty Marshall, Asst. Dist. Atty., Fort Worth, for State.

Before WEAVER, C.J., and JOE SPURLOCK, II and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellant, Gordon Kent Davis, was convicted of burglary of a building and sentenced to twenty-five years in the Texas Department of Corrections.

For reasons that follow, we affirm the judgment of the trial court.

At about 3:00 a.m. on the morning of Sunday, April 26, 1987, Fort Worth Police Officer Randy Cunningham was on routine patrol on the north side of Fort Worth when his attention was drawn to the parking lot of Trinity Distributors. Two vehicles were parked in the parking lot, one of them a newer model silver Pontiac Fiero, with their doors or hoods open. Two men, both black males of medium build and height, were carrying something in their hands and moving from a broken glass door at the front of the building toward the vehicles. As Cunningham's patrol car entered the parking lot, the two men got into a vehicle and drove off. Officer Cunningham gave chase to the silver Fiero.

Officer Cunningham did not lose sight of the Fiero during the entire chase. The Fiero came to a halt on a dirt mound at the end of a dead-end street where Davis got out and began running across an open field. Officer Cunningham shouted, "Halt. I'm a police officer." He did not lose sight of Davis although it was Officer Stamp, another police officer who had joined in the chase, who first caught up to Davis a couple of hundred yards into the field. Davis stopped, put his hands up in the air and said, "It's cool. You got me," or "You got me."

Davis first complains the trial court committed reversible error by admitting his oral statement made while under arrest as "res gestae" in violation of TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979 and Vernon Supp.1989).

■ As a general rule, a statement made by an accused during a custodial interrogation before he has been warned of his rights is inadmissible. TEX.CODE CRIM. PROC.ANN. art. 38.22; *Smith v. State*, 737 S.W.2d 933, 940 (Tex.App.—Dallas 1987, pet. ref'd). Under section 5 of article 38.22, however, this rule does not apply to a statement that is res gestae of the arrest before interrogation or to a statement that does not stem from custodial interrogation:

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining

trial in compliance with Articles 16.03 and 16.04 of this code, or of *a statement that is the res gestae of the arrest* or the offense, or of *a statement that does not stem from custodial interrogation,* or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

TEX.CODE CRIM.PROC.ANN. art. 38.22, sec. 5 (emphasis added).

■ A res gestae statement is a statement made in response to a startling event, spontaneously or impulsively, without time for reflection or contrivance. *Smith,* 737 S.W.2d at 940. An arrest may be such a startling event. *Id.*

A volunteered statement, on the other hand, is a statement not made in response to interrogation. *Stevens v. State,* 671 S.W.2d 517, 520 (Tex.Crim.App.1984) (en banc); *Sanchez v. State,* 589 S.W.2d 422, 423 (Tex.Crim.App. [Panel Op.] 1979). Interrogation includes both express questioning by the police and its functional equivalent, "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject." *Arizona v. Mauro,* 481 U.S. 520, 107 S.Ct. 1931, 1935, 95 L.Ed.2d 458 (1987), citing *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980); *Miffleton v. State,* 777 S.W.2d 76, 81–82 (Tex.Crim.App.1989).

■ In the present case the statement made by Davis upon being apprehended by the police, "It's cool. You got me." was a res gestae statement before interrogation. The statement was made by Davis just before Officer Stamp apprehended him, immediately following a high-speed car chase where Davis had wrecked his car and was attempting to escape on foot.

Since the discovery and chase were startling events, and appellant's statement was clearly immediate and spontaneous, the statement was admissible as a res gestae statement. *See Stevens,* 671 S.W.2d at 520

(defendant made admissible res gestae statement when arrested while fleeing attempted murder); *Denison v. State,* 651 S.W.2d 754, 761 (Tex.Crim.App.1983) (en banc) (defendant made admissible res gestae statement when arrested while fleeing burglary); *Mills v. State,* 747 S.W.2d 818, 822 (Tex.App.—Dallas 1987, no pet.) (defendant made admissible res gestae statement when arrested while fleeing aggravated robbery); *Smith,* 737 S.W.2d at 940 (defendant made admissible res gestae statement when arrested while about to freebase cocaine); *Phillips v. State,* 639 S.W.2d 501, 504 (Tex.App.—Fort Worth 1982), *pet. ref'd,* 651 S.W.2d 745 (Tex.Crim.App.1983) (defendant made admissible res gestae statement when arrested while fleeing burglary).

■ Davis' statement was also admissible as a volunteered statement. As Officers Cunningham and Stamp chased Davis, neither officer asked him any actual questions. Officer Cunningham identified himself as a police officer and yelled for Davis to stop, but we have not found any cases which stand for the proposition that such an identification or command constitutes interrogation likely to elicit an incriminating response. To the contrary, Officer Cunningham's identification and command would appear to be exactly those words considered "normally attendant to arrest and custody" and therefore not interrogation. *See Arizona,* 481 U.S. at 525, 107 S.Ct. at 1935; *Miffleton,* 777 S.W.2d at 81–82.

Since appellant was not expressly or implicitly questioned by Officers Cunningham and Stamp, his statement was volunteered. *See Stevens,* 671 S.W.2d at 520 (defendant made admissible voluntary statement when in custody but not in response to interrogation); *Sanchez,* 589 S.W.2d at 423 (defendant made admissible voluntary statement not in response to interrogation or inquiry); *Graves v. State,* 712 S.W.2d 627, 630 (Tex.App.—Beaumont 1986, no pet.) (defendant made admissible voluntary statement that was unsolicited, not in response to interrogation); *Parten v. State,* 672 S.W.2d 251, 252 (Tex.App.—Waco 1984, pet. ref'd) (de-

fendant made admissible voluntary statement not in response to interrogation or inquiry).

Since Davis' oral statement was admissible either as a res gestae statement before interrogation or as a volunteered statement, the trial court did not err in admitting it into evidence. Davis' first point of error is overruled.

Davis also argues the trial court erred in failing to grant his motion for mistrial when the prosecutor disregarded the trial court's ruling to provide the police report to defense counsel, which violated Davis' due process right to a fair trial.

Prior to trial, defense counsel filed a discovery motion asking for all official police reports. Davis also submitted a motion asking that the State give him copies of witnesses' statements before direct examination. At the hearing on pretrial motions defense counsel also asked for a copy of the police report. Defense counsel admitted he had seen the report before. The trial court denied the discovery motion but granted the motion asking for written statements before direct examination. The State's lead prosecutor noted that defense counsel previously had an opportunity to read the file on the case and agreed that copies of witnesses' statements would be given defense counsel "just prior to the time that witness takes the stand for direct examination." The trial court agreed and defense counsel made no objection.

At the beginning of the direct examination of Officer Cunningham, defense counsel asked for and received a copy of the officer's report. After receiving a copy of the report, defense counsel extensively cross-examined Officer Cunningham, including a long series of questions on Officer Cunningham's inability to positively identify Davis until the beginning of the foot chase. At the end of the day, the State had not concluded its direct examination of Officer Cunningham.

At the trial the next day, defense counsel made an opening statement to the jury referring to the lack of identification of appellant at the site of the burglary and inconsistencies in the testimony of the police officers. Defense counsel also moved that the trial court grant a mistrial. According to defense counsel, the State had given him a copy of the officer's report at the beginning of direct examination the previous day but defense counsel claimed it was of little value because, "I was left in that dilemma of either reading the report, not listening to the testimony or not reading the report and listening to the testimony." Therefore, he had intended to go over the report overnight to prepare for his cross-examination of Officer Cunningham the next morning.

Instead of taking the report overnight, however, the prosecutor had asked him to give it back. Apparently, defense counsel was told that if he didn't give the report back that the District Attorney's open-file policy would become closed as to him personally. This prosecutor then "stomped out of the courtroom." Another prosecutor acted as "the peacemaker," and defense counsel returned the report. The report was again given back to defense counsel at 8:30 a.m. the following morning.

The trial court denied the motion for mistrial, stating that the orders about handing over reports at the beginning of direct examination "aren't the law except in this forum."

At the close of the State's direct examination of Officer Cunningham, defense counsel began his cross-examination without requesting a recess to examine the report. He referred to the report a number of times during the cross-examination and impeachment of Officer Cunningham. He also referred to the report during the cross-examination of Officer Dean R. Christensen. Finally, during closing argument, defense counsel referred repeatedly to the inconsistencies in the officers' testimony to emphasize the lack of identification of Davis at the site of the burglary.

The prosecutor also referred to the identification of Davis in his closing argument, as set forth in the police report, even though the report had not been entered into evidence.

■ A police officer's offense report is not discoverable prior to trial. *Brem v. State*, 571 S.W.2d 314, 322 (Tex.Crim.App. 1978). It is, however, discoverable at trial under rule 614 of the Texas Rules of Criminal Evidence:

(a) **Motion for production.** After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

. . . .

(d) **Recess for examination of statement.** Upon delivery of the statement to the moving party, the court, upon application of that party, shall recess proceedings in the trial for a reasonable examination of such statement and for preparation for its use in the trial.

(e) **Sanction for failure to produce statement.** If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice.

TEX.R.CRIM.EVID. 614(a), (d), and (e) (Vernon Supp.1989).

Under this rule, after a State's witness has testified on direct examination, the defendant, upon timely request, is entitled to inspection of a State's witness' written statement or report for use in cross-examination. The State's failure to comply may result in a mistrial if required by the interest of justice. *Id.*

■ Prosecutorial misconduct may also constitute a denial of due process. Prosecutorial misconduct may implicate a specific provision of the Bill of Rights incorporated into the fourteenth amendment by the due process clause, or it may constitute what is sometimes called a "generic substantive due process" violation. *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir.1988). In the case of an asserted generic due process violation, the reviewing court asks whether the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* The test applied to determine whether a trial error made a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Id.* at 609.

In some cases, an accused can be denied due process of law because extraneous considerations render improbable or impossible an impartial judgment as to guilt. *Menzies v. Procunier*, 743 F.2d 281, 289 (5th Cir. 1984). In other cases, an accused is denied due process because extraneous considerations effectively cripple the ability of the defendant's lawyer to present his defense. *Id.* In *Menzies*, for example, the prosecutor's statements accusing the defendant's lawyer of suborning perjury were extraneous considerations which unfairly prejudiced the jury and crippled the ability of the defendant's lawyer to present an effective defense. *Id.* Likewise, in *Houston v. Estelle*, 569 F.2d 372 (5th Cir.1978), the prosecutor's repeated attacks on the motives of the defendant and his lawyer rendered the trial fundamentally unfair. *Id.* at 383. In *United States v. Candelaria–Gonzalez*, 547 F.2d 291, 294–97 (5th Cir. 1977), the prosecutor's improper cross-examination of defense witnesses and the trial court's disparagement of defense counsel in the presence of the jury combined to render the trial fundamentally unfair.

■ On the other hand, the mere fact that a prosecutor—or trial court—engages in improper or prejudicial conduct or comments will not automatically render a trial fundamentally unfair. For example, repeated prejudicial statements by the trial court in *Ostos v. State*, 713 S.W.2d 402 (Tex.App.—El Paso 1986, pet. ref'd), do not result in a denial of due process because nearly all the statements were made outside the presence of the jury and therefore

did not affect the verdict. *Id.* at 403. Similarly, in *Smith v. State,* 708 S.W.2d 518 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 839 (1987), a series of miscommunications regarding an attempted stipulation on a waiver of trial to a jury which "resulted in gradual escalation of hostilities between defense counsel and the prosecutor, eventually entangling the trial judge," was not a "tenable foundation" for a contention that the trial court's failure to disqualify the assistant district attorney was a due process violation. *Id.* at 524.

Besides the alleged misconduct of the prosecutor or trial court, the strength of the evidence of guilt and the trial court's attempts to cure any possible mistaken impressions should be considered in determining whether there is a reasonable possibility that the verdict might have been different had the trial been properly conducted. *See Cobb v. Wainwright,* 609 F.2d 754, 756 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980) (overwhelming evidence of guilt); *Ostos,* 713 S.W.2d at 403 (comments cured by instruction to disregard); *Todd v. State,* 598 S.W.2d 286, 294 (Tex.Crim.App.1980) (comments cured by instructions to disregard); *compare Menzies,* 743 F.2d at 289 (evidence of guilt not overwhelming and no correction of possible mistaken impressions).

Finally, even obviously prejudicial comments may not constitute error. In *United States v. Baresh,* 790 F.2d 392, 402 (5th Cir.1986), the trial court's citation of the defendant's attorney for contempt in front of the jury did not constitute error where the record showed that the defendant's attorney's planned trial tactic was to provoke the judge and cause the judge to react in such a manner as to cause error. In such a case, the Fifth Circuit Court held, "it would be improper to allow [the defendant] to benefit from such a calculated trial ploy." *Id.*

Davis contends the trial court erred in failing to grant his motion for mistrial because the prosecutor disregarded the trial court's ruling. In addition, according to Davis, the *attempts* by the prosecutor to intimidate his attorney were extraneous considerations which, combined with the prosecutor's blatantly improper jury argument about the contents of the report, denied him a fundamentally fair trial.

Davis is not correct. The trial court did not err in failing to grant Davis' motion for mistrial because the prosecutor did not disregard the trial court's ruling and did not violate Davis' due process right to a fair trial.

■ First, the prosecutor did not disregard the trial court's ruling. Under rule 615, Davis was entitled to Officer Cunningham's offense report at the end of the State's direct examination. TEX.R.CRIM. EVID.ANN. 614(a). Davis' attorney requested that he be given the report earlier, at the beginning of the direct examination. The State agreed, and the trial court so ordered. Defense counsel duly received a copy of the report at the beginning of the direct examination. The fact that defense counsel assumed he could keep the copy during an overnight recess, while the prosecutor assumed that the copy would be returned, does not mean that the State disregarded the trial court's ruling. To the contrary, it shows only that the ruling did not address the situation that arose. Neither defense counsel's original request nor the trial court's rulings mention recess or other delay. Since the prosecutor gave defense counsel a copy of the offense report at the beginning of the direct examination, the prosecutor was in full compliance with the actual ruling of the trial court, and the trial court was correct to deny Davis' motion for mistrial. *See* TEX.R. CRIM.EVID.ANN. 614(e) (if prosecutor fails to comply, trial court shall order a mistrial).

Moreover, even if the prosecutor's demand for the return of the copy could be construed as a failure to comply with the "spirit" of the ruling, as opposed to the "letter" of the ruling, the trial court was correct to deny a mistrial "in the interest of justice." The record shows that defense counsel had little, if any, need to keep the copy of the report overnight since he had

previously had access to and read the State's entire file. He received a copy of the report at the pretrial hearing on his motion to suppress and proceeded to use the report immediately for cross-examination, telling the trial court that he had already seen the report. The cross-examination brought out a number of inconsistencies which were the basis for defense counsel's subsequent opening statement to the jury. After the overnight recess, the copy of the report was returned to him two hours before the State's direct examination resumed and he did not request a recess to examine the report report to prepare for its use in cross-examination. Since defense counsel already knew the contents of the report and effectively used it for cross-examination twice without any need for further examination, any failure of the prosecutor to comply with the "spirit" of the ruling did not mandate a mistrial "in the interest of justice." TEX.R.CRIM.EVID. ANN. 614(e) (if prosecutor fails to comply, trial court shall declare a mistrial if required by the interest of justice).

Since the prosecutor did not disregard the trial court's ruling and there was no reason to declare a mistrial "in the interest of justice," the trial court did not err in failing to grant appellant's motion for mistrial.

■ Second, the prosecutor did not violate Davis' due process right to a fair trial. After defense counsel refused to return the copy of Officer Cunningham's report, the prosecutor told him that the District Attorney's open-file policy would become closed to him personally. However, this alleged misconduct did not make Davis' trial fundamentally unfair.

The conduct took place out of the presence of the jury, during the overnight recess. As a result, the conduct could not possibly have been an extraneous consideration which rendered the jury's impartial judgment as to guilt improbable or impossible. *See Ostos*, 713 S.W.2d at 403 (no denial of due process where prejudicial statements were made outside the presence of the jury).

Similarly, since the jury did not know about the prosecutor's conduct, there is no logical way the conduct, combined with a later closing argument, could have rendered an impartial judgment improbable or impossible.

Likewise, the conduct is characterized, even by Davis, as a mere *attempt* at intimidation. In the absence of any allegation that the conduct *actually* affected defense counsel's knowledge of and effective use of the copy of the report, the conduct could not possibly have been an extraneous consideration which effectively crippled defense counsel's ability to present Davis' defense. *See Smith*, 708 S.W.2d at 524 (miscommunication not a tenable foundation for due process claim).

In addition, the evidence against Davis was overwhelming: Davis was discovered in the act of burglary; captured after fleeing from police; and proceeds from the burglary were found in his car. The trial court throughout the trial was careful to sustain objections to sidebar comments.

Since the prosecutor's conduct was not an extraneous consideration that rendered an impartial judgment improbable or impossible or affected Davis' defense, the evidence of guilt was overwhelming, and the trial court attempted to cure any mistaken impressions, there is no reasonable possibility that the verdict might have been different had the prosecutor's conduct not occured. *See Rogers*, 848 F.2d at 608 (even if trial error, no due process violation unless reasonable possibility verdict might have been different had the trial been properly conducted).

Moreover, the record in this case supports at least an inference that defense counsel's trial tactic was to provoke the prosecutor and cause the prosecutor to react in such a manner as to cause error. Before trial Davis was offered a ten-year plea bargain but turned it down. At trial, the evidence facing Davis was overwhelming and he had no defense except to attack the State's case. Defense counsel knew the contents of the offense report and used it effectively before trial, yet he refused to give a copy of the report back upon request

and then accused the prosecutor of misconduct. He followed this accusation with a number of sidebar comments directed at the prosecutor in front of the jury. Since the record seems to show repeated attempts by defense counsel to anger the prosecutor during the course of the trial, defense counsel's planned trial tactic may well have been to provoke the prosecutor and cause the prosecutor to react in such a manner as to cause error. *See Baresh*, 790 F.2d at 402 (planned trial tactic was to provoke the judge and cause the judge to react in such a manner as to cause error). In such a case, it would be improper to allow defense counsel to benefit from such a calculated trial ploy. *Id.*

Since the prosecutor did not violate Davis' due process right to a fair trial and Davis should not be allowed to benefit from a possibly calculated trial ploy, the trial court did not err in failing to grant Davis' motion for mistrial. Therefore, appellant's second point of error is overruled.

The judgment of the trial court is affirmed.