**Eugene Alvin BROXTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–93–00249–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 10, 1993.

Discretionary Review Granted Jan. 26, 1994.

Tom Donald Moran, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before MURPHY and ROBERTSON, JJ., and ROBERT E. MORSE, Jr. (sitting by designation).

## OPINION

ROBERT E. MORSE, Jr., Justice (Sitting by Designation).

### NATURE OF THE CASE

This is an appeal from the denial of a pretrial writ of habeas corpus. Appellant Broxton was convicted of the capital murder

of Sheila Dockens and sentenced to death. At the punishment hearing in that case, the State introduced evidence of other offenses unrelated to the Dockens case. Thereafter, the State announced that it intended to try Broxton for one of those offenses, another capital murder. Broxton filed an application for writ of habeas corpus alleging that he had already been punished for that offense and other offenses used by the State in the Dockens case. He claimed that subsequent prosecutions and punishment would constitute double jeopardy. The trial court denied Broxton relief. We affirm.

### FACTS

During the punishment phase of Broxton's trial for the murder of Sheila Dockens, the State introduced evidence of the following extraneous offenses to show Broxton's deliberateness and future dangerousness: (1) the capital murders of John Gordon Miller, Gary Wayne Stuckwisch, and Albert Krigger, (2) the attempted capital murder and aggravated robbery of Grady Leon Andrews, (3) the attempted capital murder and aggravated robbery of Waylon H. Dockens, and (4) the aggravated robbery of Elbert Madden. Excerpts from the State's final argument on punishment follow:

Some of you, seeing the prior criminal record, its seriousness and its continuing nature, that may be enough for you. Certainly the series of crimes and the carnage of a death caused by Eugene Broxton is such that at this point, you should be able to answer the Special Issues yes, yes, no, so that a sentence of death could be imposed by the Court.

\*    \*    \*    \*    \*    \*

And we don't ask for the death penalty lightly, without careful consideration of all the things that you are currently aware of. Let me suggest to you it's not your fault. You didn't ask to be here today and the last several weeks and hear about the horrible things in life after life after life. There is only one person that put you in this box today, and that's Eugene Broxton. This man chose to commit each and every one of those acts. He made that decision, so don't let him lay the guilt on you for

what he did. And he had a choice. Each time, he had a choice. He had a choice when he came out of the Louisiana Department of Corrections to change his life. And you heard how short a period of time he was out of there. And then he's out of the Texas Department of Corrections for about six months, and this begins. You look at each and every one of those cases, and know that he could have quit at any time.

\*    \*    \*    \*    \*    \*

You look at the records. And you see what he's done, starting with a murder, the capital murder of Gary Stuckwisch. Now you don't have to look at all these things in isolation. You know what sits over here. And I'm going to suggest to you that Eugene Broxton is nothing short of a killing machine when you look at all these people here. And you think about that when you think about the evidence and Gary Stuckwisch's apartment, with that bloody palm print on the wall, the vehicle that was missing.... You think about John Miller and think about what happened with Gary Stuckwisch. Remember all the stab wounds, the blows to the chest, through the heart. And you've got the same thing with John Miller. With Gary Stuckwisch, fourteen times he took a knife and stabbed Gary Stuckwisch. With John Miller, eleven times.

\*    \*    \*    \*    \*    \*

You look at the John Miller case. You look at the Grady Andrews case. And look what happened with Grady Andrews.

\*    \*    \*    \*    \*    \*

Now you think about all these people up here. And with the exception of Elbert Madden, who was just threatened with a knife and beat with the electrical cord, the defendant killed or attempted to kill every person listed on this board. And you ask yourself with Sheila Dockens, whether or not that act, was it deliberate and committed with the reasonable expectation of death? He strangled someone. He stabbed two people to death. And he tried

killing Waylon Dockens, Grady Andrews and John Cherry with a pistol.

The State responded to defense counsel's mitigation argument concerning Broxton's home life:

[H]is other sister, his sister, his half-sister, his half-brother got the same kind of discipline. And they didn't turn out to be mass murderers. They didn't go out and kill Gary Wayne Stuckwisch, John Gordon Miller, Albert Krigger. They didn't kill Sheila Dockens or attempt to kill any of the other people whose names are on the blackboard.

The State's argument continued:

Then we get to the things on the blackboard over here that counsel for the defense wants to dispute with you. I guess it's just coincidence, folks, that the defendant's bloody palm print, that his print and that blood is found in Gary Stuckwisch's apartment. Just a coincidence, folks. Hey, it doesn't mean anything. It's just a coincidence. How do you think his fingerprint or his palm print got in blood on that wall? Use your common sense. Don't be misled by this, and don't even stop there. That doesn't prove he committed a capital murder. We have to prove the elements of theft. And where else is his fingerprint? In the car, in Gary Stuckwisch's car. Do you think he just happened into the apartment, fell down in blood, oh, excuse me, I'll put my palm print of the wall and go put my fingerprints in your car?

John Gordon Miller case. They're saying he's not guilty of that. Well, I guess it's just a coincidence that a witness identifies him in the courtroom as being the individual that committed the offense. But if you disregard that, once again, what's he doing? He's got more credit cards. We got two witnesses that were brought into the courtroom that told you that he used John Gordon Miller's credit cards to buy property with after John Gordon Miller's death.

\* \* \* \* \* \*

Then you've got Elbert Madden, one of the best witnesses you'll ever hear from in your entire life. And let me tell you something. If anything tells you about that man's background, listen to Mr. Madden. He's robbed at knifepoint. The man you saw him testify. What kind of force was needed to rob Mr. Madden? What did he do to him when he had him down? He beat him with an electrical cord. That's the same man they want you to give mitigating effect to his evidence, because he was beaten with an electrical cord. And what does he do? He beats Mr. Madden in the back with that electrical cord as he's robbing him at knifepoint. Now is that necessary? Is it necessary? The same person they want you to be generous to, to be lenient towards, stabs a man, strangles a man. One of the individuals that he strangled—or excuse me—that he killed, Albert Krigger, didn't even have all his limbs. That's the kind of person he is. That's the kind of people that he picks on. And they want you to be mitigating in the effect of the evidence towards him?

Albert Krigger was strangled. And we know that the last newspaper that was found in his apartment was found on May 5th of 1991. And we know that this defendant pawned property on May the 6th of 1991. And they're going to say, well, all that means was that he pawned some property.

\* \* \* \* \* \*

May the 10th of 1991, it's a fact—and I don't think there was any cross-examination that could lessen the impact of the testimony of Grady Andrews about the kind of person you're dealing with. On May the 10th of 1991, Grady Andrews was sitting in a parking lot of a Wal–Mart, minding his own business. And he's not bothering anybody. And this defendant approaches him at gunpoint, abducts him, steals his car, drives him out to Penn City Road, shoots him in the mouth. And if that's not enough, he cuts his stomach open. Johnny Cherry was driving down the road. And what does he do to Mr. Cherry? He shoots at him, too.

As a demonstrative aid, the State prepared a chart listing the extraneous offenses that the State had attempted to prove.

The jury assessed the death penalty.

Later, the State proceeded to try Broxton for one of the murders it had used in the punishment phase of Broxton's trial for the murder of Sheila Dockens. Broxton filed an application for writ of habeas corpus alleging that he had already been punished for all the offenses used in the punishment phase of that trial. The trial court conducted a hearing and denied relief. Broxton appeals.

## CONTENTIONS FOR HABEAS CORPUS RELIEF BASED ON DOUBLE JEOPARDY

In his sole point of error, Broxton argues that the double jeopardy clauses of the Fifth Amendment to the U.S. Constitution and Article I, § 14 of the Texas Constitution bar his prosecution for the extraneous offenses used in the Dockens trial because he was already punished for those offenses. The crux of Broxton's complaint is that the State used the extraneous offenses as a basis for the death penalty. He received the death penalty. Therefore, double jeopardy bars a second punishment for those offenses in a subsequent trial.

■ The double jeopardy clause of the U.S. Constitution states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V, cl. 2. The Texas provision is similarly worded: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14. The Court of Criminal Appeals has indicated that the federal and state prohibitions against double jeopardy are identical conceptually. *Phillips v. State,* 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990); *Smith v. State,* 842 S.W.2d 401, 405 (Tex.App.—Fort Worth 1992, pet. ref'd). The Court of Criminal Appeals looks to U.S. Supreme Court decisions when interpreting the double jeopardy protection of the Texas Constitution. *Smith, supra* (and cases cited there). We have been directed to no case law, and know of none, establishing a different level of protection as between federal and state double jeopardy clauses.

■ The double jeopardy clauses protect against three distinct abuses: (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Broxton relies on the third type of double jeopardy protection. The single issue for review is whether double jeopardy bars a prosecution for offenses used as punishment evidence during an earlier trial for an unrelated offense? This court and other Texas courts of appeals have determined that double jeopardy does not apply under these circumstances.

## TEXAS CASES HOLDING NO DOUBLE JEOPARDY

■ In *Lester v. State,* 824 S.W.2d 775 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), the appellant had been convicted of sexual assault. During the punishment hearing, the State introduced evidence of an unrelated sexual assault. After the first trial was complete, appellant filed an application for writ of habeas corpus alleging that prosecution for the second assault would subject him to double jeopardy. *Id.* at 776. We held that "there is no good reason why a convicted criminal should not have all of his criminal activity placed before a court or a jury in order that a proper punishment can be assessed for the crime of which he stands convicted." *Id.* at 779. The jury's mere consideration of the extraneous sexual assault when assessing punishment for the charged aggravated sexual assault did not amount to a trial, conviction, or *punishment* for the extraneous sexual assault. *Id.* at 778. *See also Barnes v. State,* 839 S.W.2d 118, 121 (Tex.App.—Dallas 1992, pet. ref'd) (use of aggravated sexual assault and burglary offenses at punishment hearing of capital murder trial did not bar subsequent trial on those extraneous offenses); *Davis v. State,* 839 S.W.2d 147, 148 (Tex.App.—Beaumont 1992, no pet.) (use of aggravated robberies at punishment hearing of trial for escape no bar to subsequent trial for the robberies); *and Smith,* 842 S.W.2d at 404 (use of extraneous

aggravated sexual assault at punishment hearing for capital murder conviction no bar to subsequent trial on the sexual assault). These decisions are in accord with *United States v. Felix*, —— U.S. ——, ——, 112 S.Ct. 1377, 1380, 118 L.Ed.2d 25 (1992), which held that double jeopardy does not bar a subsequent prosecution for conspiracy that is based on evidence of overt acts for which defendant had already been tried and punished.

## CASES WHERE DOUBLE JEOPARDY FOUND APPLICABLE ARE DISTINGUISHABLE

The cases relied on by Broxton are inapposite. In *Halper, supra,* the Court held that double jeopardy barred the federal government from exacting a punitive civil judgment based on the same conduct that had resulted in a previous criminal conviction. *Id.* 490 U.S. at 451, 109 S.Ct. at 1903; *see also Drummond v. Department of Revenue (In re Kurth Ranch)*, 986 F.2d 1308, 1311 (9th Cir. 1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 38, 125 L.Ed.2d 788 (1993) (double jeopardy barred State from imposing punitive marijuana tax on defendants already convicted and punished for marijuana offenses). But, unlike in these cases, Broxton was never *convicted* of the extraneous offenses at issue. They were merely used by the jury to determine the appropriate sentence for the murder of Dockens.

In *United States v. McCormick*, 992 F.2d 437 (2nd Cir.1993), the court held that prosecution for fraud-related conduct, used to determine the offense level per federal sentencing guidelines in a prior trial, violated the multiple-punishment provision of the double jeopardy clause. *Id.* at 442. However, in *McCormick,* the court reasoned that a primary purpose of the sentencing guidelines was to consolidate the punishment for related offenses in one proceeding. *Id.* The extraneous offenses directly increased the defendant's offense level and resulted in enhanced punishment. To allow the government to try and punish the defendant again for the same conduct would frustrate the purpose of the sentencing guidelines. *See id.* at 440. Moreover, the *McCormick* court narrowed its

holding in recognizing that at sentencing "justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with *the character and propensities of the offender."* *Id.* at 441, quoting *Pennsylvania ex. rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43 (1937) (emphasis added).

Finally, in *Rogers v. Lynaugh*, 848 F.2d 606 (5th Cir.1988), a defendant had three prior convictions. The court held that the following punishment phase argument violated the double jeopardy clause:

This is his fourth final conviction for a felony offense. Robbery, robbery, burglary and now robbery again. I submit to you that *each one of those felony offenses is worth at least 10 years.* He received 12 on the first three. You put those 12 together and you come up with 36. And that is discounting what he has done since he got out of the penitentiary. But I submit to you that if you *allocate just 10 years to each of those felony convictions you come up with 40.*

*Id.* at 610 (emphasis added).

The *Rogers* jury sentenced the defendant to precisely 40 years. Broxton argues that, just as in *Rogers,* the prosecutor in his case argued for the jury to punish him for the extraneous offenses. We disagree.

The prosecutor in Broxton's trial for the murder of Sheila Dockens was asking the jury to consider the extraneous offenses as bearing on Broxton's deliberateness in the murder of Dockens and on his future dangerousness to society:

Special Issue No. 1. Again, we're talking about the Dockens case at this point. Was that act caused deliberately, with a reasonable expectation that the death of Sheila Dockens would occur? Now you think about all these people up here.... And you ask yourself with Sheila Dockens, whether or not that act, was it deliberate and committed with a reasonable expectation of death? He strangled someone. He stabbed two people to death. And he tried killing Waylon Dockens, Grady Andrews, and John Cherry with a pistol. You ask

yourself, with this .44, something like this, whether there was any question in the defendant's mind that he was going to cause Sheila Dockens' death? Was it deliberate? After causing all those deaths, clearly it was.

\* \* \* \* \* \*

Special Issue No. 2 asks you to determine whether or not there is a probability that the defendant will commit criminal acts of violence that will constitute a continuing threat to society.... On voir dire examination we talked to you about the definition of society. Those people out in this court room are a part of society. Gary Wayne Stuckwisch was a part of society before he was brutally murdered. John Miller, Elbert Madden, Albert Krigger, Grady Andrews, Johnny Cherry, all of the Dockens' were. Those people deserve to be protected as well.

We find no resemblance between the offending argument in *Rogers* and the argument in the present case.

## CONCLUSION

In sum, we conclude that double jeopardy does not bar subsequent prosecution for the extraneous offenses that were introduced by the State at the punishment phase of Broxton's trial for the murder of Dockens. We overrule Broxton's sole point of error and affirm the judgment below.