Ex parte Eugene Alvin **BROXTON**.

No. 1394–93.

Court of Criminal Appeals of Texas, En Banc.

Nov. 16, 1994.

Tom Moran, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Rikke Burke Graber, George Lambright & Bill Hawkins, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### CLINTON, Judge.

Appellant brings this petition for discretionary review from the appeal of the denial of his pretrial writ of habeas corpus. The question presented on appeal was whether the use of an unadjudicated extraneous offense as evidence in the punishment phase of a capital murder trial, where the death penalty was assessed, barred the subsequent prosecution of that offense under the double jeopardy clauses of the Fifth Amendment of the United States Constitution and Article I Section 14 of the Texas Constitution. The court of appeals held that the subsequent prosecution did not violate the double jeopardy clauses of either the United States or Texas Constitutions. We granted this petition for discretionary review to examine that holding. Tex.R.App.Pro., Rule 200(c)(2).

### I.

Appellant was convicted of the capital murder of Sheila Dockens in Cause No. 599,218. At the punishment hearing, the State introduced evidence of several unadjudicated extraneous offenses.[1] Appellant was sentenced to death. Later, the State announced that it planned to try appellant on another capital murder—one of the offenses introduced at the Dockens punishment hearing. Appellant filed an application for writ of habeas corpus alleging that the prosecution was barred under the double jeopardy clauses of the United States and Texas Constitutions. The habeas court denied appellant relief. The Fourteenth Court of Appeals affirmed. *Broxton v. State*, 866 S.W.2d 711 (Tex.App.— Houston [14th] 1993).

Appellant argued on appeal that double jeopardy barred his prosecution for the extraneous offenses used in the Dockens punishment hearing because he was already punished for those offenses. As the court of appeals stated, "[t]he crux of Broxton's complaint is that the State used the extraneous offenses as a basis for the death penalty. He received the death penalty. Therefore, double jeopardy bars a second punishment for those offenses in a subsequent trial." *Broxton,* supra, at 714. The court of appeals held that there was no double jeopardy bar and referred to its opinion in *Lester v. State,* 824 S.W.2d 775 (Tex.App.—Houston [14th] 1992, pet. ref'd), as being dispositive. Essentially the court of appeals held, as it had in *Lester,* that double jeopardy was not offended because (1) the sentencer should have before it all of a defendant's criminal activity in order to properly sentence the defendant, and (2) the mere consideration of an extraneous of-

---

1. The State introduced evidence of the following unadjudicated offenses:
   (1) the capital murder of John Gordon Miller, the subject of the indictment in Cause No. 599,219;
   (2) the capital murder of Gary Wayne Stuckwisch, the subject of the indictment in Cause No. 599,222;
   (3) the capital murder of Albert Krigger, the subject of the indictment in Cause No. 605,-216;
   (4) the attempted capital murder and aggravated robbery of Grady Leon Andrews, the subject of the indictment in Cause No. 599,-220;
   (5) the attempted capital murder and aggravated robbery of Waylon H. Dockens; the subject of the indictment in Cause No. 559,221;
   (6) and the aggravated robbery of Elbert Madden, the subject of the indictment in Cause No. 599,223.

fense when assessing punishment for the charged offense does not amount to a trial, conviction, or punishment for the extraneous offense. "This court and other Texas courts of appeals have determined that double jeopardy does not apply under these circumstances." *Broxton,* supra, at 714.

## II.

The Double Jeopardy Clause of the United States Constitution provides "[n]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. The Double Jeopardy Clause of the Texas Constitution provides "no person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." Tex. Const. art. I, § 14. We begin our analysis with the Double Jeopardy Clause of the United States Constitution.

■ The Double Jeopardy Clause of the United States Constitution embodies three protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228, 235 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *Cervantes v. State,* 815 S.W.2d 569, 572 (Tex.Cr. App.1991).

These double jeopardy protections apply only when the duplicative prosecutions or punishments involve the "same offense." See *United States v. Dixon,* — U.S. —, —, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556, 568 (1993). The "same elements" test, or *Blockburger* test, is used to determine whether two offenses constitute the "same offense" for double jeopardy purposes:

> "the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether

each provision requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); *United States v. Dixon,* supra, — U.S. at —, 113 S.Ct. at 2856, L.Ed.2d at 568. The first inquiry, therefore, is whether or not the "same offense" is involved. In the first trial, the offense for which appellant was prosecuted was the capital murder of Sheila Dockens. Now the State intends to proceed to prosecute at least one of the other offenses for which appellant stands indicted. See n. 1, *ante.* These offenses do not involve the "same act or transaction" as the capital murder of Sheila Dockens. They are different in time, place, and victim. For double jeopardy purposes, these offenses are clearly not the "same offense" as that for which appellant has been convicted already for double jeopardy purposes. See *United States v. Felix,* — U.S. —, —, 112 S.Ct. 1377, 1382, 118 L.Ed.2d 25, 33 (1992).

■ Appellant does not argue, however, that the capital murder of Sheila Dockens is in any sense the "same offense" as any of those for which he has also been indicted. Thus, he admits he has no claim under the double jeopardy protection against multiple prosecutions. See *United States v. Felix,* supra, — U.S. at —, 112 S.Ct. at 1383, L.Ed.2d at 34. Instead, appellant argues that by utilizing the as-yet unadjudicated offenses at the punishment phase of the prosecution for the capital murder of Sheila Dockens, the State has effectively punished him once already for those offenses, and to obtain convictions on those offenses now would violate his double jeopardy protection against multiple punishment.

In order for there to be any double jeopardy bar to this second prosecution under the double jeopardy guarantee against multiple punishment, appellant has to have already been punished once. The issue before this Court is therefore whether appellant was *punished* for the unadjudicated offenses as a result of receiving the death penalty in the Dockens capital murder trial, when those unadjudicated offenses were used as evidence in the punishment hearing. We hold that appellant was not punished, and therefore he

suffered no double jeopardy violation, under either the United States or Texas Constitutions.

### III.

Extraneous offenses are frequently given consideration in sentencing decisions and the double jeopardy clause is not offended. Both the United States Supreme Court and this Court have held that the use of prior convictions for enhancement purposes under a recidivist or habitual offender statute does not constitute double punishment for those prior convictions and therefore does not violate double jeopardy. *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); *Passmore v. State*, 544 S.W.2d 399 (Tex.Cr.App.1976); *Mullins v. State*, 409 S.W.2d 869 (Tex.Cr.App.1966). The United States Supreme Court has held that the consideration of prior convictions in the punishment phase of a trial does not constitute double punishment for those prior convictions. *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (capital murder trial). While the decision in *Williams* was based on the due process clause, many courts have held that its reasoning applies to the double jeopardy clause as well. See *United States v. Cruce*, 21 F.3d 70, 75 n. 8 (C.A.5 1994); *United States v. Wise*, 603 F.2d 1101, 1106–07 (C.A.4 1979); *United States v. Carey*, 943 F.2d 44, 46–47 n. 4 (C.A.11 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1676, 118 L.Ed.2d 394 (1992); *Johnson v. District Court of Oklahoma County*, 653 P.2d 215 (Okl.Cr.App.1982).[2] Numerous courts have held that the consideration of unadjudicated extraneous offenses at the punishment phase in noncapital cases does not constitute punishment for those offenses and therefore the subsequent prosecution of those offenses does not violate double jeopardy. See *Sekou v. Blackburn*, 796 F.2d 108 (C.A.5 1986); *Callins v. Collins*, 998 F.2d 269, 274 (C.A.5 1993); *United States v. Carey*, 943 F.2d 44 (C.A.11 1991); *United States v. Piteo*, 726 F.2d 53, 54 (C.A.2 1984), *cert. denied*, 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 348 (1984); *State v. Doucette*, 150 Vt. 125, 549 A.2d 268, 269 (1988); *Sheriff, Lander County, Nevada v. Morfin*, 107 Nev. 557, 816 P.2d 453 (1991).

The Oklahoma Court of Criminal Appeals has addressed the exact issue before this Court today. *Johnson v. District Court of Oklahoma County*, 653 P.2d 215 (Okl.Cr.App. 1982).[3] In *Johnson* the court found that the unadjudicated extraneous offense evidence was used to establish the defendant's character and criminal propensities, in order to justify the imposition of the death penalty. The court held that such consideration did not constitute punishment and that the subsequent prosecution of the defendant for those offenses did not violate double jeopardy.[4]

Numerous Texas courts of appeal have addressed similar issues and all of these courts have held that the subsequent prosecution of an offense used as evidence in a punishment hearing does not violate double jeopardy. See *Smith v. State*, 842 S.W.2d 401 (Tex.App.—Fort Worth 1992, pet. ref'd) (capital punishment hearing, jury answered "no" to special issue number two); *Davis v. State*, 839 S.W.2d 147 (Tex.App.—Beaumont 1992, no pet.) (noncapital punishment hear-

---

**2.** At the time of *Williams*, the double jeopardy clause of the Fifth Amendment of the United States Constitution had not yet been held to be applicable to the states. See *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969).

**3.** There appear to be substantial similarities between the Oklahoma capital punishment system in the *Johnson* case and the Texas system in appellant's case. The State was seeking the death penalty and the trial was bifurcated. After the jury had found the defendant guilty, there was a second phase during which the State had to prove, beyond a reasonable doubt, certain aggravating factors in order for the sentence of

death to be imposed. The aggravating factor at issue in *Johnson* was whether "there existed the probability that the [defendant] would constitute a continuing threat to society by committing future acts of violence." *Id.* at 215. The State introduced evidence of unadjudicated extraneous offenses in an effort to prove this aggravating factor.

**4.** In resolving this issue, the Oklahoma court analogized the consideration of unadjudicated extraneous offense evidence in the *Johnson* capital punishment hearing to the consideration of prior convictions both with habitual offender statutes and in capital sentencing.

ing); *Barnes v. State*, 839 S.W.2d 118 (Tex. App.—Dallas 1992, pet. ref'd) (noncapital punishment hearing); *Lester v. State*, 824 S.W.2d 775 (Tex.App.—Houston [14th] 1992, pet. ref'd) (noncapital punishment hearing).[5]

The underlying rationale for all of these decisions is that the sentencer needs to have information about the individual defendant, including his criminal background, in order to make the appropriate sentencing decision—to make the sentence fit the offender. See *Sanne v. State*, 609 S.W.2d 762, 773 (Tex.Cr.App.1980); *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929, 941 (1976); *Sekou v. Blackburn*, supra, at 111; *United States v. Bowdach*, 561 F.2d 1160, 1175 (C.A.5 1977); *United States v. Piteo*, supra, at 54; *Sheriff, Lander County, Nevada v. Morfin*, supra, 816 P.2d at 455. The heavier penalty, which may result because of the consideration of other criminal conduct, is not punishment for the other crimes; rather, the existence of the other crimes aggravates the commission of the latest crime and justifies the imposition of a harsher sentence for the charged offense. See *McDonald v. Massachusetts*, supra, 180 U.S. at 312, 21 S.Ct. at 390, 45 L.Ed. at 546–47; *Sekou v. Blackburn*, supra, at 112; *Johnson v. District Court of Oklahoma County*, supra, at 218–19.[6]

---

**5.** Appellant does not claim the Texas appellate court cases were wrongly decided but rather he attempts to distinguish his case, arguing that the State made an improper jury argument at the Dockens punishment hearing. Appellant cites to *Rogers v. Lynaugh*, 848 F.2d 606 (C.A.5 1988). The court of appeals adequately addressed this contention by appellant. See *Broxton*, 866 S.W.2d at 715–16.

**6.** In *McDonald*, the Supreme Court stated that "[t]he fundamental mistake of the [defendant] is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished.... But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony ... by one who had been twice convicted and imprisoned for crime.... The punishment is for the new crime only, but is the heavier if he is an habitual criminal." *Id.*, 180 U.S. at 312, 21 S.Ct. at 390, 45 L.Ed. at 546–47.

**7.** The 1990 version of the Texas Code of Criminal Procedure was in effect at the time of appellant's

This reasoning is equally applicable to the consideration of unadjudicated extraneous offenses at a capital murder punishment hearing. Under Article 37.071, V.A.C.C.P., in order for a sentence of death to be imposed, the State must prove that the statutory special issues should be answered affirmatively. See *Marquez v. State*, 725 S.W.2d 217, 225–26 (Tex.Cr.App.1987).[7] Evidence of unadjudicated extraneous offenses is admissible to prove these special issues. See *Kemp v. State*, 846 S.W.2d 289, 307 (Tex.Cr.App.1992); *Rumbaugh v. State*, 629 S.W.2d 747, 754 (Tex.Cr.App.1982). However, the defendant is being punished for the capital murder for which he is on trial, not for these other offenses. All defendants found guilty of capital murder will be sentenced either to life imprisonment or to death. See V.T.C.A. Penal Code, § 12.31. Article 37.071 does not inflict any additional punishment for the unadjudicated offenses, it merely classifies the offenders subject to its provisions according to their "deathworthiness." The function of the jury at the capital punishment hearing is not so much to assess a specific punishment as it is to answer the statutory special issues, and once the jury has done so, the punishment itself is automatic. See Article 37.071(e), V.A.C.C.P.[8]

---

trial and sentencing. Article 37.071 then read, in relevant part:

"(b) On conclusion of the presentation of the evidence, the court shall submit the following ... issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

\*　\*　\*　\*　\*　\*

(c) The state must prove each issue submitted beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted."

**8.** In *Washington v. State*, 677 S.W.2d 524, 528 (Tex.Cr.App.1984), this Court made similar observations regarding the habitual offender statute, former V.T.C.A. Penal Code, § 12.42(d). "Section 12.42(d), supra, did not create an offense, inflict additional punishment for the prior

Extraneous offenses serve a purely evidentiary function at the punishment phase of a capital case. They are admissible to the extent they are relevant to prove the special issues. In most cases they will be admitted to facilitate the prediction whether the defendant will constitute a future danger to society. But in making the prediction regarding "future dangerousness," the jury is permitted to consider many different factors.[9] Evidence of extraneous offenses is certainly not necessary for the jury to make an affirmative finding of "future dangerousness" and for the defendant to receive the death penalty. See *James v. State*, 772 S.W.2d 84, 90 (Tex.Cr. App.1989) (jury can find that defendant will constitute future threat to society based on circumstances of the offense alone); *O'Bryan v. State*, 591 S.W.2d 464, 481 (Tex.Cr.App. 1979) (jury can find that defendant will constitute future threat to society even though defendant has no prior criminal record). If, as has been universally held, the use of prior convictions to enhance does not constitute further "punishment" for jeopardy purposes in an ordinary, noncapital recidivist scheme, then so much less is a defendant "punished" by the mere evidentiary use of unadjudicated offenses to facilitate factfinding under our capital punishment special issue practice.

We hold that appellant was not punished for the unadjudicated extraneous offenses at the capital punishment hearing. Extraneous offenses, both adjudicated and unadjudicated, are frequently considered in sentencing. The sentencer needs to have as much information about the individual defendant as possible in order to make the appropriate sentencing decision. Such consideration does not violate the double jeopardy clause because the punishment is for the charged offense, not for the extraneous offenses.

There is no need to address appellant's contention that the Texas double jeopardy clause provides greater protection under these circumstances than does the United States double jeopardy clause. Because we find that appellant was not "punished" for the unadjudicated extraneous offenses at the Dockens capital punishment hearing, the double jeopardy protection against multiple punishment, under either constitution, is not implicated and therefore not violated.

Accordingly, we affirm the judgment of the court of appeals.

MALONEY, J., concurs in the result.

BAIRD, Judge, concurring.

Appellant has been convicted of capital murder and sentenced to death. *See*, Tex.Penal Code Ann. § 19.03. The appeal of that conviction and sentence is presently pending before this Court. *See*, Tex.Code Crim.Proc.Ann. art. 37.071. The instant petition was necessary because the State seeks to try appellant for another, separate capital offense and, if successful in that prosecution, the State will seek a second death sentence.

The majority grapples with appellant's double jeopardy claim and concludes this subsequent prosecution is not jeopardy barred because appellant was not punished at his earlier trial for the offense giving rise

---

offense, or authorize a conviction on the habitual criminal charge. The statute merely classified and caused a more severe punishment to be assessed because of the offender's persistence in crime." *Id.* at 527. Also, before the legislature amended 12.42(d) to provide for a range of punishment, once the jury made a finding that the defendant was an "habitual offender," the punishment of life imprisonment was automatic. "The function of the jury when dealing with an habitual offender case was actually not to assess punishment but instead was to make the determination whether the defendant was an habitual offender. Once that determination was made the punishment was 'absolutely fixed by law.'" *Id.* at 528.

**9.** These include, but are not limited to:

(1) the circumstances of the capital offense, including the defendant's state of mind and whether he or she was working alone or with other parties;
(2) the calculated nature of the defendant's acts;
(3) the forethought and deliberateness exhibited by the crime's execution;
(4) the existence of a prior criminal record, and the severity of the prior crimes;
(5) the defendant's age and personal circumstances at the time of the offense;
(6) whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;
(7) psychiatric evidence; and
(8) character evidence.
*Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Cr.App. 1987).

to the instant prosecution. Majority op. p. 28. That conclusion is unquestionably correct under all relevant authority.

In my view, a more persistent question remains: What is to be gained by this subsequent prosecution? Today, there are nearly 400 inmates on death row in Texas. Since *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas*), Texas has carried out more executions than any other State. There seems little doubt that our death row population will continue to grow and that our executions will increase in number. However, this will not occur without great costs to our already burdened criminal justice system. The average inmate serves ten years on death row prior to his execution. Jackie Koszczuk, *Group blasts Texas in death penalty study,* Fort Worth Star Telegram, January 14, 1993 (quoting Ron Dusek, spokesman for Texas Attorney General). There is general agreement that the average costs of a capital murder prosecution exceeds $2,000,000.00. Jim Mattox, *Texas' death penalty dilemma,* Dallas Morning News, August 25, 1993. But there are additional, non-financial, costs involved.

A capital murder prosecution consumes the time of the trial judge and the prosecutors as well as the time of the clerk, bailiff, jailer and court reporter. These public servants are not able to discharge their other duties while the court is in session ruling on motions, selecting a jury and trying the case. Such prosecutions also require the testimony of many police officers, investigators, medical examiners, criminologists and others who will spend countless hours preparing their testimony, waiting to testify and eventually testifying. Instead of protecting the streets and neighborhoods, seeking solutions for unsolved crimes, interviewing witnesses, or preparing for other trials, those various public servants bide their time at the courthouse. All of these individuals are compensated from public funds.

Unfortunately, these are not the only participants involved in such a trial. Hundreds of citizens will be summoned to court as potential jurors. Their time is consumed sitting around the courthouse where countless hours will be wasted while they wait to be questioned by the parties and judge. During this time, these potential jurors are away from their work and homes, losing income and valuable time with their families. From these hundreds of citizens, no less than twelve will be chosen to serve on the jury. The jurors suffer the hardship of spending weeks and perhaps months away from their families and jobs.

Apparently, there exists no scarceness of judicial resources in Harris County; nor can there be a shortage of prosecutors or peace officers. This subsequent capital murder prosecution of appellant will apprise the Legislature that no more courts are needed in Harris County and no additional funds will be requested for more police officers or other similar public servants.

Finally, one must ask what effect will a second death sentence have? Will one who already resides on death row be deterred? Will others be deterred by knowing that if they commit two capital crimes, they will be executed not once but twice? Such questions are left to be answered by others—either the elected district and county attorneys of this State who decide when to seek the death penalty, or the voters to whom those prosecutors are ultimately accountable. All the while, we spend our time, efforts and resources addressing issues raised by a man already condemned to die.

With these observations, I join the majority opinion.