# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00573-CR

**Michael Berry, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-01-462, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michael Berry appeals his convictions for aggravated sexual assault, sexual assault, and prohibited sexual conduct. *See* Tex. Pen. Code Ann. §§ 22.011(a)(1)(A); 22.021(a)(1)(A), (a)(2)(A)(iv); 25.02(a)(1) (West 2003). After the jury found appellant guilty of all three counts, the trial court assessed punishment at 99, 20, and 10 years in prison, and ordered the terms to be served consecutively. In three issues, appellant contends that the sexual assault count is barred on double jeopardy grounds by his conviction for aggravated sexual assault, and that the evidence is legally insufficient to prove that he committed the offenses using or exhibiting a deadly weapon or with force or violence. For the reasons that follow, we hold that the sexual assault count

is not barred by the prohibition against double jeopardy and that the evidence is legally sufficient. Accordingly, we affirm the judgment.

## BACKGROUND

Appellant was A.B.'s stepfather and uncle and the father of her son. Her mother, Terrie, had been married to Richard Richardson, whose sister was married to appellant. Richardson died in 1979 when A.B. was fourteen months old, and in 1986, a relationship developed between appellant, a police officer, and Terrie. A.B. was seven years old when appellant's relationship began with her mother.

A.B., who was twenty-four years old at the time of trial, testified that appellant initially began having sexual intercourse with her when she was in the second grade, the family lived in Kerens in Henderson County, and her mother was pregnant with her sister. The conduct continued on a regular basis thereafter. The sexual abuse worsened when A.B. was in the fourth grade and the family moved to Athens. Appellant would make A.B. give him oral sex and would then engage in sexual intercourse, sometimes with the mother and sister asleep in the same king-sized bed. On other occasions, appellant would direct A.B. to another room to engage in sex or they would engage in sex as appellant drove A.B. to school. A.B. testified to engaging in various types of sex acts with appellant in cemeteries, parks, and along country roads. On one occasion, A.B. resisted because she had an ear infection and was in pain, but appellant insisted she continue.

When A.B. was twelve, Terrie Berry caught appellant and A.B. engaging in sex in the bedroom. Appellant had told A.B. that if anyone ever caught them, she was "supposed to run and hide or something and wait for him to tell me what to do." Terrie Berry left the house with her

2

two daughters and drove to Dallas. When they returned home to Athens that evening, there were two letters on the table, one addressed to Terrie Berry and the other to A.B. Terrie Berry took them both and they were gone when A.B. asked to read the one addressed to her. She testified that she wanted to read the letter "[s]o I would know what I was supposed to do, so I didn't get any more trouble, so I didn't make it any worse than it already was."

Approximately two months later, at about Christmastime, appellant returned home. A.B. recalled that the abuse began again on the day appellant returned, and appellant "wanted to make sure that I knew that, any time, any place, if I didn't do what he wanted, he could kill my mother and my sister." Because appellant had law enforcement connections, the family was fearful of reporting him to the authorities. But after Terrie Berry walked in on appellant engaging in sex with A.B. again and kicked him out of the house a second time, A.B.'s stepbrother, who did not live in the house, filed a report with Child Protective Services. Although CPS followed up on the report, it dropped the investigation when appellant denied the charges.

In 1990, appellant and Terrie married. The family moved to Bullard when A.B. was thirteen years old, and then to Bradford, both in Henderson County. The abuse worsened. Because A.B.'s mother worked two jobs, she was not in the house as often and the abuse became more frequent. Appellant became possessive of A.B. and accused her of cheating on him with her eighth-grade boyfriend. Appellant told her that she could not have a boyfriend because she belonged to him. A.B. testified: "He would tell me that, if I ever slept with another man that—he had this long knife and he would lay it on my stomach and tell me, 'If you want to f--- something, I will f--- you with this and then you will know and then we'll see how much you want to go out.'" A.B. testified that she was afraid to die and would do what appellant asked her to do. Appellant displayed guns

3

and knives in the home and kept a homemade sword by the door. A.B. was pregnant with appellant's child when she graduated from high school. As a cover story, she told her mother and brother that she had engaged in sexual intercourse with a classmate.

Some time in 1997, when A.B. was nineteen years old and her child six months old, the family moved to a residence on Purgatory Road in Hays County. Appellant began wearing a gun holstered on a leather braid around his neck. Appellant testified that she continued to have sex with appellant because she was "scared" of appellant and his weapons:

> He would give me a look or one of the things I got used to knowing it was time to do it and I was supposed to do. We'd go in the back bedroom and it would start with him giving me oral sex. And then . . .we would vaginal sex [sic], and he would either take the gun and swing it around behind and put it up here (indicating) or he would take it off and set it right beside him. . . . Sometimes it was before and other times he would lean over and it would swing at my face so I could see it, and then he would take it off and put it down beside him.

A.B. testified that the gun was always within appellant's easy reach. But A.B. acknowledged that appellant never pointed the gun directly at her.

A.B. testified that on July 15, 2001, she engaged in oral and vaginal sex with appellant against her will. With the gun hanging around his neck, appellant forced A.B. to engage in sexual acts. In response to the prosecutor's question about how he physically "forced" her to engage in sex, she testified:

> He had forced me all my life. It was the same thing. He had complete control over me. I didn't make my own decisions. I don't go anywhere unless he said to go. I didn't do anything unless he said to do it. So he forced me to do everything in my life. That was just another thing that he forced me to do.

4

Similarly, A.B. testified that on July 1, 2001, she engaged in sex with appellant with the gun "exhibited."

Other proof corroborated A.B.'s testimony. Terrie Berry testified to appellant's display of weaponry and his threats: At one point, appellant threatened her that he would take A.B. and bring her back pregnant; he implied on other occasions that he would hurt the family. Appellant's son, Michael Berry, Jr., who was thirty-one at the time of trial, testified that on the occasion appellant had been caught engaging in sexual acts with A.B., "He told me he had had sex with my sister," and that he needed help. "He had done it once and he would never do it again." Berry, Jr. testified that he called Child Protective Services three times. The family then moved away and Berry, Jr. did not see them for six years. He testified that, when A.B. was twelve years old, he intercepted a letter from appellant to her saying that when she was eighteen, she and appellant could be together and everything would be "okay." Berry, Jr. testified that he destroyed the letter.

Appellant did not testify on his own behalf, but in a statement to the police he admitted to having sex with A.B. but that it was entirely consensual and "mutual." He also stated: "When my daughter was about 18 she became pregnant. We tried to find out who the father was, but was unable to." A paternity test introduced into evidence as a stipulation of fact showed that the probability of appellant's paternity was 99.99996% and that he could not be excluded as the biological father of A.B.'s child.

Appellant was charged with using or exhibiting a deadly weapon, to wit, a handgun, during the commission of aggravated sexual assault on or about July 15, 2001; using force and violence to commit sexual assault on or about July 15, 2001; and engaging in prohibited sexual

conduct on or about July 1, 2001, when he engaged in sexual intercourse with his stepchild while married to her mother. Appellant was convicted on all three counts.

## DISCUSSION

In his first issue, appellant urges that his rights against double jeopardy were violated because he was convicted of sexual assault as well as aggravated sexual assault, both arising from the same occurrence on the same date. In his second and third issues, he contends that the evidence is legally insufficient to prove that he exhibited a deadly weapon or used force or violence to commit the assaults.

Because the State elicited testimony that only one episode of sexual intercourse occurred on July 15, appellant first contends that it cannot be the subject of both aggravated sexual assault and sexual assault. In his brief on appeal, he acknowledges that the State "elicited testimony that there had been numerous acts of sexual intercourse between Appellant and the complainant in Hays County," but that the State did not elect among the offenses. At the outset, we note that appellant did not object to the form of the indictment or the State's failure to elect.[1]

The thrust of appellant's contentions is that he has been subjected to a multiple punishment type of double jeopardy violation for the same offense. Appellant cites case law but does not expressly cite either the federal or state constitutional provisions. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 14. Appellant has waived any state constitutional claim by failing to distinguish the double jeopardy protection guarantee under the state constitution from that of the

---

[1] *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp. 2001) (failure to object waives any defect, error, or irregularity to form or substance of indictment).

6

federal constitution. *See Jackson v. State*, 992 S.W.2d 469, 475 n.8 (Tex. Crim. App. 1999); *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); *Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992).

We turn, then, to appellant's contention that there was a double jeopardy violation under the federal constitution. While this Court is bound by the Supreme Court's decision interpreting the scope of the double jeopardy clause of the United States Constitution, the determination of what constitutes an "offense" is largely a matter of state law. *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999) (citing *Iglehart v. State*, 837 S.W.2d 122, 127 (Tex. Crim. App. 1992)). The state legislature has the power to establish and define crimes and "few, if any, limitations are imposed by the double jeopardy clause on the legislative power to define offenses." *Iglehart*, 837 S.W.2d at 127.

The double jeopardy clause of the Fifth Amendment to the United States Constitution embodies three protections: (i) against a second prosecution for the same offense after acquittal; (ii) against a second prosecution for the same offense after conviction; and (iii) against multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex. Crim. App. 1994). When a defendant is tried in a single trial, as here, only the third aspect of the double jeopardy protections against multiple punishments is involved. *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990). Convictions of both the greater inclusive and lesser-included offenses arising out of the same act violate the multiple punishments prohibition in the double jeopardy clause. *Hutchins v. State*, 992 S.W.2d 629, 632 (Tex. App.—Austin 1999, pet. ref'd, untimely filed).

7

The first count of the indictment alleged in pertinent part that appellant "on or about" the 15th day of July, 2001, " did then and there intentionally and knowingly cause the penetration of the female sexual organ of A.B. with the Defendant's sexual organ, without the consent of the said A.B., and in the course of the same criminal episode, the said Defendant used or exhibited a deadly weapon, to wit: a handgun." The second count alleged that appellant "on or about" the 15th day of July, 2001, "did then and there intentionally and knowingly cause the penetration of the female sexual organ of A.B. with the said Defendant's sexual organ, without the consent of the said A.B., and the said Defendant compelled A.B. to submit and participate by the use of physical force and violence." Because both offenses are alleged to have occurred "on or about the 15th day of July, 2001," appellant urges that they were the same offense.

The use of the "on or about" dates is almost universal in the drafting of indictments and other criminal pleadings. In setting forth the requisites of an indictment, article 21.02 provides: "The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitations." Tex. Code Crim. Proc. Ann. art. 21.02(6) (West 1989). The "on or about" language allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment or return of the indictment and within the statutory limitation period. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Scoggan v. State*, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990). When an indictment alleges that some relevant event transpired "on or about" a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory limitation period. *Garcia v. State*, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998) (purpose of

8

specifying date is to show that the prosecution is not barred by statute of limitations). *Thomas v. State*, 753 S.W.2d 688, 692 (Tex. Crim. App. 1988); *Ferrell v. State*, 968 S.W.2d 471, 473 (Tex. App.—Fort Worth 1998, pet. ref'd) (involving allegations of aggravated sexual assault of a child and indecency with a child); *see also* 41 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure* § 20.341, at 730-31.

The indictment here alleged that the offenses in counts one and two occurred "on or about the 15th day of July, 2001," but the State was not required to prove that either offense occurred on the specific date alleged. The indictment was returned on September 12, 2001; the statute of limitations for both offenses is ten years from the complainant's eighteenth birthday. *See* Tex. Code Crim. Proc. Ann. art. 12.01(5) (West Supp. 2001).

The evidence at trial showed that sexual assaults with the exhibition of the handgun and by the use of physical force and violence occurred on a number of occasions other than July 15, but specifically occurred on July 1 and July 15, 2001. Although the prosecutor never established dates for the other assaults, the times established in Hays County were within the State's allegation of "on or about" the 15th day of July 2001 as alleged in the first two counts of the indictment. *See Sledge*, 953 S.W.2d at 256. Under the circumstances shown here, then, the State has established at least two separate dates on which appellant committed more than one act. On these facts, appellant's conviction and punishment for aggravated sexual assault and sexual assault do not violate the constitutional prohibition against double jeopardy.

The jury returned separate verdicts, general in nature, finding appellant guilty of each count "as charged in the indictment." Where the jury returns a general verdict finding a defendant

guilty as charged in the indictment, the verdict must be applied to the phase of the offense which is supported by the evidence. *Vasquez v. State*, 665 S.W.2d 484, 487 (Tex. Crim. App. 1984).

In any event, appellant did not raise this issue in the trial court. Ordinarily, this failure to present a double jeopardy complaint would mean no error is preserved for appellate review. *See Ex parte Murphy*, 669 S.W.2d 320, 322 (Tex. Crim. App. 1983); *Nash v. State*, 467 S.W.2d 414, 416 (Tex. Crim. App. 1971). A double jeopardy claim may be raised for the first time on appeal "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no state interest." *Gonzales v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). We conclude from an examination of the record that appellant has not demonstrated either a double jeopardy violation on the face of the record or that a trial objection would have served no legitimate state interest. We thus hold that appellant forfeited his right to raise for the first time on appeal a double jeopardy violation by failing to object at trial and that he has not carried his burden to revive that right under the *Gonzalez* test. We overrule his first issue.

In his second and third issues, appellant urges that the evidence is legally insufficient to support appellant's conviction for aggravated sexual assault or sexual assault. Specifically, he asserts that the evidence is insufficient to establish that appellant used or exhibited a deadly weapon to facilitate the offense or that he used force or violence.

In reviewing a legal sufficiency challenge, we view all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Curry v.*

10

*State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We consider all the evidence, both direct and circumstantial. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We do not examine the fact finder's weighing of the evidence, but merely determine whether there is evidence supporting the judgment. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

As indicted, the challenged statutory element of aggravated sexual assault applicable in this case is the use or exhibition of a deadly weapon during the commission of the assault. *See* Tex. Pen. Code Ann. § 22.021(a)(2)(A)(iv). The challenged statutory element of sexual assault is the use of physical force or violence, that is, whether the defendant compelled A.B. to submit or participate by the use of force or violence against her. *See id.* § 22.011(b)(1) (West 2003).

The meaning of the terms "use" and "exhibit" with respect to a deadly weapon was discussed by the court of criminal appeals in *Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989). The term "use" means to utilize, employ, or apply the deadly weapon to achieve an intended result. *Id.* at 941. It includes simple possession if the possession facilitates the commission of the associated felony. *Id*. "Exhibit" means to consciously show, display, or present for viewing during the commission of the crime. *Id.* There is ample evidence that appellant exhibited a weapon and that he regularly wore it on a braid around his neck even when he engaged in sexual intercourse with A.B. When he did take it off, he kept it within reach. He rarely removed the pistol, except to shower. Although there is no testimony that he ever pointed the pistol at A.B., or threatened to shoot her, she testified that she feared him and was threatened by the presence of the gun and other weapons. The evidence shows that appellant at the very least exhibited the gun. Clearly, by its

11

exhibition appellant created a climate of fear and force. We conclude that a rational jury could have found that appellant exhibited the gun to achieve the illegal acts and maintain control over A.B.

Similarly, a reasonable jury could find that appellant compelled A.B. to submit and participate by the use of physical force. With regard to both occurrences on July 1 and July 15, A.B. testified to the coercion and force appellant used to compel her to submit and participate in sexual intercourse. She testified that he was armed and had complete control over her. The long history of control and display of various weapons in connection with sexual intercourse is sufficient to establish the challenged element.

When viewed in the light most favorable to the prosecution, we conclude that the direct and circumstantial evidence supports a rational finding that the essential elements of the charged offenses were proved beyond a reasonable doubt. The verdict of the jury, the finder of fact, is supported by legally sufficient evidence. Appellant's second and third issues are overruled.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   August 29, 2003

Do Not Publish

12