In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00049-CR**
_____

**DENNIS JERMAINE BOOKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 14-20464**

**MEMORANDUM OPINION**

A jury convicted Dennis Jermaine Booker of murder and then assessed a 60 year sentence. Booker appeals his conviction, and in four issues, he argues that (1) he received ineffective assistance of counsel; (2) the trial court erred by admitting a statement that he made while in police custody about having stabbed the victim, Xavier Cane, in self-defense; (3) the trial court erred by denying Booker's request for an instruction on "sudden passion" during the punishment phase of the trial; and

(4) the evidence is insufficient to establish that Booker was guilty of murdering Cane beyond reasonable doubt. We overrule Booker's issues and affirm the final judgment.

Background

On the night of August 15, 2014, Cane suffered a fatal stab wound to his chest while attending a party at an apartment complex in Port Arthur, Texas. In addition to Cane, fifteen or more others, including Booker, Amira Johnson, Elijah Foreman, and Demetri Martin, attended the party. Johnson, Booker's girlfriend, came to the party with Booker, but they argued, and she left the party with Cane. The testimony in the trial shows that Johnson and Cane were cousins.

The testimony also shows that shortly before the fight between Booker and Cane occurred, Booker and Johnson had been arguing. Cane confronted Booker about why Booker and Johnson were arguing. Cane and Booker began to fight, and in the course of that fight, Cane's friends, and Johnson, began to fight with Booker and his friends.

During Booker's trial, Johnson testified that she remembered seeing a kitchen knife with a black and grey handle by a box in the kitchen of the apartment. The kitchen was very close to where the fight between Booker and Cane occurred. During Johnson's testimony, she identified a handle that did not have a blade as the

knife-handle that she had seen in the kitchen of the apartment before Booker and Cane got into a fight. Johnson testified that the knife she saw in the kitchen did not belong to Booker and that she had never seen Booker carrying that particular knife.

Two of Cane's friends, Martin and Foreman, testified in the guilt-innocence phase of Booker's trial. Martin testified that he saw Cane approach Booker on the night of the party after having previously seen Booker arguing with Johnson. According to Martin, Cane went up to Booker and asked "what happened." At that point, Booker and Cane started fighting, and Cane was on top of Booker for nearly the entire fight. The evidence from the trial indicates that Cane was over six feet tall and weighed approximately 296 pounds. Martin was asked whether he saw a knife during the fight, but he testified that he did not see anyone with a knife, that he did not see who stabbed Cane, and that he did not see Booker stab Cane. However, Martin agreed that on the night the fight occurred, he told the police that Sakari White, another individual who was at the party, stabbed Cane. Martin explained that he told the police that White stabbed Cane because he heard others say that they saw White with a knife immediately after the fight occurred. The day after the fight, Martin spoke to police again. By then, Martin decided that White could not have stabbed Cane in the chest because she was behind him during the entire fight, and from that position, she "would have stabbed [Cane] in the back[.]"

3

Foreman, Cane's friend, was one of the individuals who came to the party with Cane. When asked if he witnessed the whole fight between Booker and Cane, Foreman testified that he saw the fight start, but that he went outside before the fight was over. According to Foreman, he saw someone jump on Cane's back while Cane was on top of Booker. Foreman testified that he did not see who stabbed Cane. Foreman testified that he did not recall seeing anyone with a knife in their hand while he was inside the apartment, but he did see a knife in the kitchen near a cake. When the fight ended, Cane, his friends, and Johnson, left the apartment and were going to a car that was near the apartment complex. Booker and his friends followed Cane's group from the apartment when they went to the car. On the way to the car, Martin noticed that Cane had blood on his shirt. Shortly after Cane and his friends got into the car to leave, Cane's friends realized that Cane had been stabbed.

Before Cane's group departed the complex in the car, Johnson and Foreman noticed that White had a pocketknife in her hand. Johnson and Foreman testified in Booker's trial that they saw White use the knife to slash three of the tires of their car. Martin, who was driving the car, took Cane to the hospital. Cane was between Foreman and Joseph in the back seat of the car. According to Foreman, on the way to the hospital, he applied pressure to Cane's chest wound. Cane mumbled during

most of the trip, and he spoke a little about his son. Foreman told Cane to stop talking because they were trying to get him to the hospital.

The autopsy that was performed on Cane indicates that he died at 3:39 a.m. on August 16, 2014. According to Dr. John Wayne, the pathologist who performed the autopsy, Cane had a stab wound to his chest that penetrated his heart. According to Dr. Wayne, the chest wound that punctured Cane's heart caused his death. Dr. Wayne did not identify the weapon that caused Cane's wound. According to Dr. Wayne, "[a]ny object that had a sharp edge could have caused [Cane's] stab wound." Cane's chest wound was approximately five to six inches deep, and Dr. Wayne did not find any blades or metal inside Cane's body.

Five of the police officers involved in the investigation of the altercation at the apartment between Cane and Booker testified during Booker's trial. Officer Jamarcus Davis, a patrol officer with the Port Arthur Police Department, testified that he responded to a call about a disturbance at the apartment complex where the fight occurred. According to Officer Davis, when he drove up to the complex, he saw a car with three flat tires leaving the complex. Officer Davis testified that when he walked up to the apartment that was the subject of the disturbance call he received, he saw blood on the sidewalk. Officer Davis explained that when he went inside the apartment, he saw several people in the den and kitchen area, and he found

Booker in the bathroom. When Officer Davis found Booker, Booker was washing blood off his hands. Officer Davis testified that he did not notice any visible wounds on Booker's hands. Booker told Officer Davis that "he was washing his hands due to hitting a wall." Officer Davis and another officer, Officer Chris Duncan, made everyone go outside the apartment. Officer Davis explained that while he was involved in the investigation, he was notified that a person at the apartment had gone to the hospital with a stab wound and that the person who had been stabbed was in serious condition. The police gave Officer Davis the names of two potential suspects, and told him that both suspects were believed to still be present at the complex.

Officer Duncan, another Port Arthur police officer who participated in the investigation, testified during Booker's trial. Officer Duncan explained that he saw blood on the bottom of the door of the apartment where the disturbance had reportedly occurred. According to Officer Duncan, he was advised by a police dispatcher that Booker was a potential suspect. At that point, he placed Booker in handcuffs. Officer Duncan testified that he did not question Booker, but when he placed Booker in handcuffs Booker volunteered: "We were fighting: I stabbed that n*****. It was self-defense."[1]

---

[1] The trial court conducted a hearing without the jury present before it allowed the jury to hear Officer Duncan's testimony about Booker's statement. In the hearing, Officer Duncan testified that Booker made the statement while in custody,

6

Officer Duncan searched Booker after Booker admitted stabbing Cane, and Officer Duncan found the handle of a knife in Booker's front left pocket. Officer Duncan identified the handle of the knife that he took from Booker's pocket during the trial. According to Officer Duncan, the police never located the blade that went with the handle. On cross-examination, Officer Duncan agreed that he could not say whether Cane's wound was caused by a kitchen knife.

Officer Tomas Barboza, an off-duty patrol officer with the Port Arthur Police Department, was another of the police officers who responded to the disturbance call on the night Cane was stabbed. When Officer Barboza got to the apartment, he saw several people seated outside. He also saw that Booker had already been handcuffed. Officer Barboza testified that he heard Booker say "He came at me first and that's why I stabbed him."[2]

---

but that Booker volunteered the statement even though he did not ask Booker any questions. Officer Duncan testified that, "[f]or some reason my audio recorder was not working." The trial court overruled Booker's objection to admitting the statement before the jury in the trial.

[2] The trial court also conducted a hearing outside the jury's presence to address the admissibility of Officer Barboza's testimony about Booker's statement. The trial court overruled Booker's objection to Officer Barboza's testimony regarding what he heard Booker say. Officer Barboza was not asked whether his body microphone captured Booker's statement.

Officer Reid Rowe, a patrol sergeant with the Port Arthur Police Department, also came to the apartment complex on the night Cane was stabbed. When Officer Rowe got to the complex, he saw several individuals handcuffed and sitting outside the apartment. According to Officer Rowe, he heard Booker say: "We were fighting and I stabbed that n****. It was self-defense."[3] Officer Rowe left the apartment complex and went to the hospital, where he spoke with Cane's friends. According to Officer Rowe, Cane's friends thought that White was the person who stabbed Cane. However, Officer Rowe explained that he had seen White when he went to the apartment complex, and White did not appear as if she had been in a struggle, and he did not see any signs that White had blood on her. Officer Rowe explained that upon further questioning of Cane's friends, he learned that they had actually only seen White with a knife outside the apartment and that none of them actually saw who stabbed Cane.

---

[3] In the hearing the trial court conducted before admitting Officer Rowe's testimony, Officer Rowe testified that he asked the group seated outside the apartment "what's going on." According to Officer Rowe, Booker did not respond. Officer Rowe testified that while explaining to the individuals outside the apartment what the police were doing there, Booker volunteered that he stabbed Cane. Officer Rowe was not asked to address whether his body microphone captured Booker's statement.

Officer Eric Thomason was the last officer who testified in the guilt-innocence phase of Booker's trial. According to Officer Thomason, he attempted to speak with Cane while the doctors were treating him. However, Cane could only respond to his questions with grunts and groans, and Cane was unable to tell him what actually happened.

Following closing argument, the jury found Booker guilty of murder and assessed a sixty-year sentence. This appeal followed.

Analysis

*Is the Evidence Sufficient to Support the Verdict?*

In his fourth issue, Booker argues the evidence was insufficient to allow the jury to conclude, beyond reasonable doubt, that Booker murdered Cane. If Booker were to prevail on this issue, he would be entitled to an acquittal. *See Brooks v. State*, 323 S.W.3d 893, 898-902 (Tex. Crim. App. 2010). Therefore, because issue four would give Booker the greatest relief, if sustained, we begin by addressing Booker's fourth issue. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating that the reviewing court should first address complaints that would afford the defendant the greatest relief).

When reviewing a legal sufficiency challenge in a criminal case, we review all the evidence admitted before the jury in the light that most favors the jury's

9

verdict to determine whether any rational factfinder could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In a jury trial, the jury is the sole judge of the credibility of the witnesses and the weight to afford testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may make reasonable inferences of fact from the evidence as it sees fit, to weigh the evidence, and to draw reasonable inferences from the facts in reaching a conclusion regarding the defendant's guilt. *See Hooper*, 214 S.W.3d at 13. We "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton v. State*, 235 S.W.3d 772, 778 (quoting *Hooper*, 214 S.W.3d at 16-17). Circumstantial evidence alone can be sufficient to establish a defendant's guilt. *Hooper*, 214 S.W.3d at 13.

To prove that Booker was guilty of murder, the State was required to prove that Booker intentionally or knowingly caused Cane's death. *See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2011). The cause of Cane's death was undisputed, as the evidence showed he died as a result of a stab wound to his chest. However, Booker disputes whether the evidence was sufficient to establish that he was the person who stabbed Cane. In closing argument, Booker criticized the police for not fully

10

investigating whether White used her pocketknife to stab Cane; pointed out that while three officers allegedly heard Booker say that he had stabbed Cane, none of them captured the statement on the microphones they were carrying on their uniforms that night; noted that the handle of the knife found in Booker's pocket did not have any blood on it, and that the evidence failed to address whether the handle was capable of having a blade long enough to cause Cane's deep stab wound; observed that on the night the stabbing occurred, both Johnson and Foreman claimed that White stabbed Cane; suggested that the weapon actually used to cause Cane's wound was never found; and questioned whether the knife like the one in the kitchen could have made a wound like the wound that resulted in Cane's death.

Even though Booker criticizes the quality and amount of the evidence before the jury, the record contains evidence from which a jury could reasonably infer that Booker was the person who stabbed Cane. The two were fighting shortly before Cane discovered his wound; Booker had blood on his hands when police first found him in the bathroom a short time after the fight occurred; and Booker stated in the presence of three police officers that he stabbed Cane. These facts allowed the jury to infer that Booker was the person who stabbed Cane. After reviewing the evidence in the light that most favors the verdict, we conclude that a rational jury could have found beyond reasonable doubt that Booker knowingly or intentionally stabbed Cane

11

and that Cane's chest wound caused his death. *See Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. Therefore, we overrule Booker's fourth issue.

*Did the Trial Court Err by Admitting*
*Booker's Statements about Stabbing Cane?*

In his second issue, Booker argues that he should receive a new trial because the trial court erred when it admitted Booker's statements indicating that he was the person who stabbed Cane. According to Booker, his statements were not admissible because the statements were made while he was in custody and before he was warned of his *Miranda*[4] rights.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton*, 280 S.W.3d at 240 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). The test for abuse of discretion is whether the ruling was arbitrary or unreasonable. *Montgomery*, 810 S.W.2d at 380. We may uphold a trial court's ruling on any legal theory or basis that applies to the case. *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

12

An oral statement made by a person accused of a crime that results from a custodial interrogation is not admissible at trial unless the accused was warned of his rights, and the accused knowingly, intelligently, and voluntarily waived those rights. *See Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966); *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a)-(b) (West Supp. 2017). However, when the statements the accused made were not made as the result of an interrogation, the statements are not excluded based on either article 38.22 or under *Miranda*. Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West Supp. 2017) ("Nothing in this article precludes the admission of a statement by the accused . . . that is res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation or of a voluntary statement[.]"); *Miranda*, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence," and "[v]olunteered statements of any kind are not barred by the Fifth Amendment[.]"). For example, the United States Supreme Court has held that voluntary statements made in custody that are not the product of an interrogation are admissible. *Rhode Island v. Innis*, 446 U.S. 291, 299-300 (1980) (holding that *Miranda* did not prohibit voluntary statement that was not made in response to a question by police even though the defendant was in police custody). To be suppressed, the accused's incriminating response must have been "the product

of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Id*. at 303.

Under Texas law, the defendant has the initial burden to establish that his statement resulted from a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). In Booker's case, there is no evidence that Officers Duncan, Barboza, or Rowe would have reasonably anticipated that Booker would volunteer the statements they testified that he made and all of them explained during the hearings the trial court conducted that Booker was not being interrogated when he made the statements that are at issue in his appeal. In deciding whether to admit the police officers' respective accounts about Booker's statements, the trial court was entitled to believe their accounts about the context in which Booker's statements occurred. Officer Duncan indicated that Booker, upon being handcuffed, volunteered the statement about stabbing Cane, and that he volunteered the statement without being asked any questions. Officer Barboza indicated that he heard Booker admit that he stabbed Cane when he approached the group where Booker was sitting and before he asked Booker any questions. Officer Rowe stated that Booker volunteered the statement while he was attempting to explain to a group of people seated outside the apartment what police were doing there and that Booker made the statement even though no specific question had been directed at him. The trial court

was allowed to conclude from the context in which Booker's statements occurred that the officers did not reasonably anticipate getting an incriminating response from Booker. "That the suspect was neither expressly nor implicitly questioned by police officers at the time the statement was made often determines the voluntariness of a statement." *Ramirez v. State*, 105 S.W.3d 730, 741 (Tex. App.—Austin 2003, no pet.) (citing *Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984); *Sanchez v. State*, 589 S.W.2d 422, 423 (Tex. Crim. App. 1979); *Earnhart v. State*, 582 S.W.2d 444, 448 (Tex. Crim. App. 1979); *Davis v. State*, 780 S.W.2d 945, 947 (Tex. App.—Fort Worth 1989, pet. ref'd)).

We hold the evidence authorized the trial court to find that Booker's statements were not the products of custodial interrogations. Therefore, we conclude the trial court did not abuse its discretion by admitting Booker's statements indicating that he was the person who stabbed Cane. We overrule Booker's second issue.

*Ineffective Assistance of Counsel*

In his first issue, Booker argues that he received ineffective assistance of counsel. According to Booker, his attorney should have requested the trial court to instruct the jury on self-defense, and to instruct the jury that it could consider convicting Booker on the lesser-included-offense of manslaughter. Additionally,

15

Booker alleges that "the totality of trial counsel's representation constituted ineffective assistance of counsel."

To establish a claim of ineffective assistance of counsel, the defendant must show that the performance of his attorney fell below an objective standard of reasonableness, and that, but for counsel's alleged error, the outcome of the proceedings would probably have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). When making an ineffective assistance of counsel claim, the defendant bears the burden of developing the facts needed to show that his attorney was ineffective under the standards identified in *Strickland*. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689). Generally, to prove a claim of ineffective assistance, the defendant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson v. State* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 690).

In Booker's case, Booker filed a motion for new trial that alleges a claim of ineffective assistance. However, Booker's motion for new trial does not specifically explain why he was claiming that trial counsel's performance had been deficient. Additionally, Booker did not attach any affidavits or exhibits to establish how the attorney who represented him in his trial provided a defense that fell below the

16

standards that apply to attorneys. The record also does not show that the trial court conducted a hearing on Booker's motion. Importantly, because the trial court did not conduct a hearing on Booker's motion, the record presently before us contains no response by Booker's counsel explaining why he chose to handle Booker's defense in the manner that appellate counsel criticizes in Booker's appeal.

Booker must prove that there was no professional reason for the specific acts or omissions of trial counsel that appellate counsel is criticizing in Booker's appeal. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 1999). To prove ineffective assistance, the "allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)).

The record in Booker's direct appeal is insufficient to demonstrate that "counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833 (citation omitted). On this record, we conclude that Booker has failed to defeat the strong presumption that counsel's decisions during his trial fell within the wide range of reasonable

17

professional assistance. *See Bone*, 77 S.W.3d at 833. Because the trial court did not conduct a hearing on Booker's motion for new trial, the record available in Booker's direct appeal does not demonstrate that trial counsel's performance was the product of an unreasonable trial strategy, or that counsel's performance led to an unreliable verdict or punishment. *Id*. We overrule Booker's first issue without prejudice to Booker's right to raise his claim in a post-conviction writ. *See Goodspeed*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Robinson*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

*Was Booker Entitled to an Instruction on Sudden Passion?*

Following the punishment phase of his trial, Booker asked the trial court to instruct the jury that it could consider whether he caused Booker's death under the immediate influence of a sudden passion that arose from an adequate cause. *See* Tex. Penal Code Ann. § 19.02(d) (West 2011). The trial court ruled that Booker was not entitled to a sudden passion issue.[5] In issue three, Booker argues that he is entitled to a new punishment hearing because the trial court refused his request for a charge that would have allowed the jury to consider whether he acted in a state of sudden passion. *See id.*

---

[5] When it denied Booker's request, the trial court stated that Booker "specifically testified that that's not what it was. In addition, [Booker] testified that he does not believe that he committed the offense."

18

If Booker had been entitled to an issue based on the doctrine of sudden passion, the jury in his case would have been instructed that if Booker proved that he caused Cane's death under the immediate influence of sudden passion arising from an adequate cause, the offense would be punishable by imprisonment for two to twenty years, or five to life if enhanced for one prior felony. *See id.* ("If the defendant proves [sudden passion] in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree."). Under the facts in Booker's case, his punishment range was enhanced because he had a prior felony conviction. Thus, had Booker proven that he acted under the influence of sudden passion, the jury would have been instructed to consider a minimum sentence of five years rather than the fifteen year minimum that it considered under the charge the trial court gave the jury. *See id*. §§ 12.33(a) (West 2011), 12.42(b) (West Supp. 2017), 19.02(d).

In reviewing a complaint of charge error, we first consider whether error exists. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). A punishment phase instruction is needed to address a claim of sudden passion only if the evidence supports allowing the jury to consider the doctrine. *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). The Court of Criminal Appeals has explained:

> [B]efore a defendant is allowed a jury instruction on sudden passion,
> he must prove that there was an adequate provocation, that a passion or

19

an emotion such as fear, terror, anger, rage, or resentment existed, that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide.

A jury should receive a sudden passion charge if it is raised by the evidence, even if that evidence is weak, impeached, contradicted, or unbelievable. However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury.

*Id*.

We review the evidence in Booker's trial in the light most favorable to Booker in determining whether he was entitled to an issue on his claim that he acted under the influence of a sudden passion arising from an adequate cause. *See Griffin v. State*, 461 S.W.3d 188, 192 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A defendant is entitled to a jury instruction on the issue of sudden passion if the record supports a reasonable inference that: (1) the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) he committed the murder before regaining his capacity for cool reflection; and (4) a causal connection existed "between the provocation, passion, and homicide." *Wooten*, 400 S.W.3d at 605 (internal quotations omitted); *McKinney*, 179 S.W.3d at 569; *see also* Tex. Penal Code Ann. § 19.02(a)(1)-(2)

(West 2011). Nonetheless, the mere fact that a defendant acted in response to the provocation of another individual is not sufficient to warrant a charge of sudden passion. *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003). Instead, the testimony must show that the defendant killed the victim while acting under the immediate influence of a sudden passion. *Id.*

Under the Penal Code, the term "sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex. Penal Code Ann. § 19.02(a)(2). To prove the state of passion was the direct result of an adequate cause, the defendant must prove that he acted in response to a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). The testimony in both the guilt-innocence and the punishment phases of the trial are reviewed to decide if the trial court ruled properly on a defendant's request for a sudden passion issue. *See Trevino*, 100 S.W.3d at 238; *Griffin*, 461 S.W.3d at 192.

In his brief, Booker argues that the heated altercation he had with Johnson, followed by Cane's confronting him about the altercation with Johnson, provoked and angered him to the point that he was not capable of coolly deciding how to

21

respond. However, the testimony from the trial does not show that Booker reacted immediately to Cane's questioning him about his treatment of Johnson by using deadly force. And, none of the testimony about the fistfight shows that Booker, during the fight, acted in response to a cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper that would have caused a reasonable person to reach for a knife and stab Cane. Finally, there is nothing in the record about Booker's relationship with Johnson that indicates a person of ordinary temper would have stabbed Cane because Cane questioned Booker about how Booker was treating Johnson. We agree with the trial court's conclusion that Booker failed to introduce evidence that he would have responded to Cane's questioning of Booker with any force at all, much less deadly force. *See* Tex. Penal Code Ann. § 19.02(a)(1) (defining "adequate cause"); *Trevino*, 100 S.W.3d at 241 ("The mere fact that a defendant acts in response to the provocation of another is not sufficient to warrant a charge on sudden passion."). Additionally, nothing in the testimony about the fight itself shows that Booker developed an adequate cause that would allow a jury to reasonably conclude that his use of deadly force was justified. *Id.* We hold the trial court properly denied Booker's requested instruction, and we overrule Booker's third issue.

22

## Conclusion

Given our resolution of Booker's appellate issues, Booker's conviction for murder is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 11, 2017
Opinion Delivered December 13, 2107
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

23